JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOSHUA DA SILVA, by and through his parents and legal guardians ANDREZA LOPEZ DASILVA and JOSE DASILVA

## DEFENDANTS

CLINTON TURNER, TEMPLE UNIVERSITY HOSPITAL, INC., ET AL.

**(b)** County of Residence of First Listed Plaintiff    Philadelphia

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia, PA

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joseph L. Messa, Jr., Esq./Megan M. Kwak, Esq.
MESSA & ASSOCIATES, P.C.
123 S. 22nd Street - Philadelphia, PA 19103 - (215) 568-3500

Attorneys *(If Known)*
Colin M. Cherico/Elizabeth L. Coyne, AUSAs {for Clinton Turner /US}
615 Chestnut Street, Suite 1250, Philadelphia, PA 19106
James A. Young, Esq. {for Temple Defendants}, Christie & Young, PC

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

◻ 1   U.S. Government Plaintiff

◻ 3   Federal Question
    *(U.S. Government Not a Party)*

⊠ 2   U.S. Government Defendant

◻ 4   Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ◻ 1 | ◻ 1 | Incorporated *or* Principal Place of Business In This State | ◻ 4 | ◻ 4 |
| Citizen of Another State | ◻ 2 | ◻ 2 | Incorporated *and* Principal Place of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure of Property 21 USC 881 | ◻ 422 Appeal 28 USC 158 | ◻ 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury - Product Liability | ◻ 690 Other | ◻ 423 Withdrawal 28 USC 157 | ◻ 376 Qui Tam (31 USC 3729(a)) |
| ◻ 130 Miller Act | ◻ 315 Airplane Product Liability | | | | ◻ 400 State Reapportionment |
| ◻ 140 Negotiable Instrument | ◻ 367 Health Care/ | | | **PROPERTY RIGHTS** | ◻ 410 Antitrust |
| ◻ 150 Recovery of Overpayment & Enforcement of Judgment | ◻ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ◻ 820 Copyrights | ◻ 430 Banks and Banking |
| ◻ 151 Medicare Act | ◻ 330 Federal Employers' Liability | Product Liability | | ◻ 830 Patent | ◻ 450 Commerce |
| ◻ 152 Recovery of Defaulted Student Loans | ◻ 340 Marine | ◻ 368 Asbestos Personal Injury Product | | ◻ 835 Patent - Abbreviated New Drug Application | ◻ 460 Deportation |
| (Excludes Veterans) | ◻ 345 Marine Product Liability | Liability | | ◻ 840 Trademark | ◻ 470 Racketeer Influenced and Corrupt Organizations |
| ◻ 153 Recovery of Overpayment of Veteran's Benefits | ◻ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ◻ 480 Consumer Credit |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle Product Liability | ◻ 370 Other Fraud | ◻ 710 Fair Labor Standards Act | ◻ 861 HIA (1395ff) | ◻ 485 Telephone Consumer Protection Act |
| ◻ 190 Other Contract | ◻ 360 Other Personal Injury | ◻ 371 Truth in Lending | ◻ 720 Labor/Management Relations | ◻ 862 Black Lung (923) | ◻ 490 Cable/Sat TV |
| ◻ 195 Contract Product Liability | | ◻ 380 Other Personal Property Damage | | ◻ 863 DIWC/DIWW (405(g)) | ◻ 850 Securities/Commodities/ |
| ◻ 196 Franchise | ⊠ 362 Personal Injury - Medical Malpractice | ◻ 385 Property Damage Product Liability | ◻ 740 Railway Labor Act | ◻ 864 SSID Title XVI | Exchange |
| | | | ◻ 751 Family and Medical Leave Act | ◻ 865 RSI (405(g)) | ◻ 890 Other Statutory Actions |
| | | | | | ◻ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ◻ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ◻ 893 Environmental Matters |
| ◻ 210 Land Condemnation | ◻ 440 Other Civil Rights | **Habeas Corpus:** | ◻ 791 Employee Retirement Income Security Act | ◻ 870 Taxes (U.S. Plaintiff or Defendant) | ◻ 895 Freedom of Information Act |
| ◻ 220 Foreclosure | ◻ 441 Voting | ◻ 463 Alien Detainee | | ◻ 871 IRS—Third Party 26 USC 7609 | ◻ 896 Arbitration |
| ◻ 230 Rent Lease & Ejectment | ◻ 442 Employment | ◻ 510 Motions to Vacate Sentence | | | ◻ 899 Administrative Procedure Act/Review or Appeal of |
| ◻ 240 Torts to Land | ◻ 443 Housing/ Accommodations | ◻ 530 General | | | Agency Decision |
| ◻ 245 Tort Product Liability | ◻ 445 Amer. w/Disabilities - Employment | ◻ 535 Death Penalty | **IMMIGRATION** | | ◻ 950 Constitutionality of State Statutes |
| ◻ 290 All Other Real Property | ◻ 446 Amer. w/Disabilities - Other | **Other:** | ◻ 462 Naturalization Application | | |
| | ◻ 448 Education | ◻ 540 Mandamus & Other | ◻ 465 Other Immigration Actions | | |
| | | ◻ 550 Civil Rights | | | |
| | | ◻ 555 Prison Condition | | | |
| | | ◻ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

⊠ 1 Original Proceeding    ◻ 2 Removed from State Court    ◻ 3 Remanded from Appellate Court    ◻ 4 Reinstated or Reopened    ◻ 5 Transferred from Another District *(specify)*    ◻ 6 Multidistrict Litigation - Transfer    ◻ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 233
Brief description of cause:
Medical Malpractice of Deemed Federal Employees

## VII. REQUESTED IN COMPLAINT:

◻ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ⊠ Yes   ◻ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE Eduardo C. Robreno    DOCKET NUMBER 19-4111

DATE 3/12/2020

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

JOSHUA DA SILVA, by and through his parents and
legal guardians, ANDREZA LOPEZ DASILVIA and
JOSE DASILIVA          v.

CIVIL ACTION

TEMPLE UNIVERSITY HOSPITAL, et al.

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( X )

| 3/12/2020 | Elizabeth L. Coyne | United States of America |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-861-8447 | 215-861-8618 | elizabeth.coyne@usdoj.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 3305 Oakmont Street, Philadelphia, PA 19136

Address of Defendant: _____ 3401 North Broad Street, Philadelphia, PA 19140

Place of Accident, Incident or Transaction: _____ Temple University Hospital

---

**RELATED CASE, IF ANY:**

Case Number: _____ 19-4111 _____ Judge: _____ Eduard C. Robreno _____ Date Terminated: 10/24/2019

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 3/12/2020 _____ Must sign here _____ 322641
Attorney-at-Law / Pro Se Plaintiff _____ Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
      *(Please specify):* _____ 42 U.S.C. Section 233

**B.   Diversity Jurisdiction Cases:**

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
      *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Elizabeth E. Coyne _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 3/12/2020 _____ Sign here if applicable _____ 322641
Attorney-at-Law / Pro Se Plaintiff _____ Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSHUA DA SILVA, by and through his          :
parents and legal guardians, ANDREZA         :
LOPEZ DASILVA and JOSE DASILVA               :
                                             :
        Plaintiffs,                          :
                                             :
vs.                                          :          CIVIL ACTION NO.
                                             :
TEMPLE UNIVERSITY HOSPITAL, INC.,            :
a/k/a d/b/a TEMPLE UNIVERSITY                :
HOSPITAL; TEMPLE UNIVERSITY                  :
HEALTH SYSTEM, INC.; TEMPLE                  :
UNIVERSITY HOSPITAL DEPARTMENT               :
OF OBSTETRICS, GYNECOLOGY;                   :
SAMANTHA JAGANNATHAN, M.D.;                  :
SARAH MARTIN, M.D.; AND MICAELA              :
FERNANDES, R.N.                              :
                                             :
        Defendants.                          :
                                             :

## NOTICE OF REMOVAL

Under 42 U.S.C. § 233, the United States of America, on behalf of additional defendant

Clinton A. Turner, M.D., removes this action from the Court of Common Pleas for Philadelphia

County, Pennsylvania, to the United States District Court for the Eastern District of

Pennsylvania. In support, the United States avers as follows:

1.      On December 17, 2019, plaintiff J.D. and his parents and legal guardians,

Andreza Lopez DaSilva and Jose DaSilva commenced this action by filing a complaint in the

Court of Common Pleas of Philadelphia County, naming as defendants: Temple University

Hospital, Inc., a/k/a Temple University Hospital; Temple University Health System, Inc.; Temple

University Hospital Department of Obstetrics, Gynecology; Samantha Jagannathan, M.D.; Sarah

Martin, M.D.; and Micaela Fernandes, R.N. *See* Exhibit 1.

2.      On January 17, 2020, the Temple Defendants filed a joinder complaint adding

Clinton A. Turner, M.D. as an additional defendant and asserting that, if the Temple Defendants

are found to be liable for the plaintiffs' alleged injuries, Dr. Turner is either solely liable to the plaintiffs or jointly and/or severally liable with the Temple Defendants. *See* Exhibit 2, ¶¶ 6–7.

3.        By operation of the Federally Supported Health Centers Act, 42 U.S.C. § 233(c), defendant Clinton A. Turner, M.D. is deemed a federal employee of the United States Public Health Service for purposes of the claims asserted against him in this matter, and covered by the remedy and certain procedures of the Federal Tort Claims Act, which provides the exclusive remedy for state-law tort actions brought against individuals or entities deemed to be federal employees acting within the scope of their employment. *See* 42 U.S.C. §§ 233(a), 233(g).

4.        Actions brought under the Federal Tort Claims Act, as incorporated into the Federally Supported Health Centers Act, *see* 42 U.S.C. §§ 233(a) and (c), may only be brought in federal district court. *See id.*; *see also* 28 U.S.C. § 1346. Therefore, this action must be removed to federal district court.[1]

5.        No bond is required as this notice is filed by the United States. *See* 42 U.S.C. § 233(c).

6.        A certified copy of this Notice of Removal will be filed in the Office of Judicial Support of the Court of Common Pleas of Philadelphia County, and sent to all parties.

7.        Removal is timely under 42 U.S.C. § 233(c), which provides that a civil action of this nature may be removed at any time before trial.

8.        Once removed, the United States will move to dismiss Clinton A. Turner, M.D. as a defendant and substitute the United States of America pursuant to 42 U.S.C. § 233(g). The United States will then move to stay this action until Plaintiffs exhaust their administrative claim.

---

[1]        This action is related to a previous action that was also removed to this Court. *See Da Silva v. Temple University Hospital, Inc. et al.*, No. 2:19-cv-4111 (E.D. Pa.) (Robreno, J.). The previous action was dismissed without prejudice so that Plaintiffs could exhaust their administrative remedies against the United States of America. *See* Order Granting Plaintiffs' Motion for Voluntary Dismissal, *Da Silva v. Temple University Hospital, Inc. et al.*, No. 19-cv-4111, ECF No. 5 (E.D. Pa. Oct. 25, 2019). Plaintiffs' subsequent administrative claim is still pending. The United States of America has marked this removed action as related to Civil Action 19-4111 and requests that it be assigned to Judge Robreno.

WHEREFORE, under 42 U.S.C. § 233, the United States of America respectfully removes this action from state court to this Court.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

Susan R. Bech-th680

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

COLIN M. CHERICO
ELIZABETH L. COYNE
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 861-8788/8447
Fax: (215) 861-8618
Dated: March 12, 2020                     Email: colin.cherico@usdoj.gov
                                                 elizabeth.coyne@usdoj.gov

3

## CERTIFICATE OF SERVICE

I certify that on this date, I filed the foregoing Notice of Removal with the Court and served

a copy by first-class mail upon the following:

Joseph L. Messa, Jr., Esquire
Megan M. Kwak, Esquire
MESSA & ASSOCIATES, P.C.
123 South 22nd Street
Philadelphia, PA 19103

*Counsel for Plaintiffs*

James A. Young, Esquire
Richard S. Margulies, Esquire
Adrianna M. Yanez, Esquire
BURNS WHITE
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103

*Counsel for Defendant Temple University
Hospital, Inc., a/k/a Temple University
Hospital; Temple University Health System,
Inc.; Temple University Hospital Department
of Obstetrics, Gynecology; Samantha
Jagannathan, M.D.; Sarah Martin, M.D.; and
Micaela Fernandes, R.N.*

Dated: March 12, 2020

ELIZABETH L. COYNE
Assistant United States Attorney

# EXHIBIT 1

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **DECEMBER 2019** | **001095** |
| E-Filing Number: 1912017287 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| ANDREZA L. DASILVA | TEMPLE UNIVERSITY HOSPITAL, INC., ALIAS: TEMPLE UNIVERSITY HOSPITAL |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3305 OAKMONT STREET PHILADELPHIA PA 19136 | 3401 NORTH BROAD STREET PHILADELPHIA PA 19140 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JOSE DASILVA | TEMPLE UNIVERSITY HEALTH SYSTEM, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3305 OAKMONT STREET PHILADELPHIA PA 19136 | 3401 NORTH BROAD STREET PHILADELPHIA PA 19140 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | TEMPLE UNIVERSITY HOSP. DEPARTMENT OF OBSTETRICS, GYNECOLOGY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 3401 NORTH BROAD STREET PHILADELPHIA PA 19140 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 2 | 6 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal  [ ] Writ of Summons  [ ] Transfer From Other Jurisdictions | | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less  [X] More than $50,000.00 | [ ] Arbitration  [X] Jury  [ ] Non-Jury  [ ] Other: | [ ] Mass Tort  [ ] Savings Action  [ ] Petition | [ ] Commerce  [ ] Minor Court Appeal  [ ] Statutory Appeals | [ ] Settlement  [ ] Minors  [ ] W/D/Survival |

**CASE TYPE AND CODE**
2M - MALPRACTICE - MEDICAL

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** **DEC 06 2019** **A. SILIGRINI** | IS CASE SUBJECT TO COORDINATION ORDER?  YES    NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ANDREZA L DASILVA , JOSE DASILVA

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JOSEPH L. MESSA JR | MESSA & ASSOCIATES PC 123 SOUTH 22ND STREET PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)568-3500 | (215)568-3501 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 53645 | JMessa@Messalaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| JOSEPH MESSA JR | Friday, December 06, 2019, 12:23 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

Case ID: 191201095

⑤

**COMPLETE LIST OF DEFENDANTS:**

1. TEMPLE UNIVERSITY HOSPITAL, INC. — *accepted ₶ 12/17/19*
   ALIAS: TEMPLE UNIVERSITY HOSPITAL
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
2. TEMPLE UNIVERSITY HEALTH SYSTEM, INC. — *accepted ₶ 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
3. TEMPLE UNIVERSITY HOSP. DEPARTMENT OF OBSTETRICS, GYNECOLOGY — *accepted ₶ 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
4. SAMANTHA JAGANNATHAN, M.D. — *accepted ₶ 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
5. SARAH MARTIN, M.D. — *refused ₶ 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
6. MICAELA FERNANDEZ, R.N. — *accepted ₶ 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
     Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

Attorneys for ~~Plaintiff~~ and ~~Attested~~ by the
                                    Office of Judicial Records
THIS IS NOT AN ~~ARBITRATION~~           pm
CASE. ASSESSMENT ~~OF~~
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.

| | |
|---|---|
| JOSHUA DA SILVA, by and through his parents and legal guardians, ANDREZA LOPEZ DASILVA and JOSE DASILVA, <br><br>                                      **Plaintiffs** <br><br> **vs.** <br><br> TEMPLE UNIVERSITY HOSPITAL, INC., a/k/a d/b/a TEMPLE UNIVERSITY HOSPITAL; TEMPLE UNIVERSITY HEALTH SYSTEM, INC.; TEMPLE UNIVERSITY HOSPITAL DEPARTMENT OF OBSTETRICS, GYNECOLOGY; SAMANTHA JAGANNATHAN, M.D.; SARAH MARTIN, M.D.; AND MICAELA FERNANDES, R.N., <br><br>                                      **Defendants.** | PHILADELPHIA COUNTY COURT OF COMMON PLEAS <br><br><br> DECEMBER TERM, 2019 <br><br><br> No. _____ |

## CIVIL ACTION COMPLAINT
### 2M – PROFESSIONAL MEDICAL MALPRACTICE
### NOTICE TO DEFEND

| **"NOTICE"** | **"AVISO"** |
|---|---|
| "You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. <br><br> "YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP." <br><br> Philadelphia Bar Association <br> Lawyer Referral <br> and Information Service <br> One Reading Center <br> Philadelphia, PA 19107 <br> (215) 238-6333 <br> TTY (215) 451-6197 | "Le han demando a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación.  Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. <br><br> "LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA  O  LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL." <br><br> Asociacion de Licenciados <br> de Filadelfia <br> Servicio de Referencia e <br> Informacion Legal <br> One Reading Center <br> Philadelphia, PA 19107 <br> (215) 238-6333 <br> TTY (215) 451-6197 |

1

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
    Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

**Attorneys for Plaintiff**

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

Plaintiffs,

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH
SYSTEM, INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**PHILADELPHIA COUNTY
COURT OF COMMON PLEAS**

**DECEMBER TERM, 2019**

No. _____

I

Case ID: 191201095
Case ID: 191201095

SARAH MARTIN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

MICAELA FERNANDES, R.N.
3401 N. Broad St.
Philadelphia, PA 19140

                    **Defendants.**

### PLAINTIFFS' COMPLAINT
### 2M – PROFESSIONAL MEDICAL MALPRACTICE

Plaintiffs, Andreza Lopez DaSilva and Jose DaSilva, individually and on behalf of their son Joshua DaSilva, a minor, by and through their attorneys, Messa & Associates, P.C., bring the following Amended Complaint, and in support thereof aver as follows:

### INTRODUCTION

1.      On December 13, 2017, Plaintiffs were anxiously anticipating the birth of their fourth child, when they presented to Temple University Hospital for a scheduled C-section.

2.      Mrs. Lopez DaSilva came under the care of Dr. Turner, Dr. Saperstein, and Nurse Fernandes.

3.      When Plaintiffs presented to Labor and Delivery, there was evidence of a live, well-oxygenated fetus.

4.      At approximately 3:30 p.m., during the placement of an IV by Nurse Fernandes, there was evidence of a prolonged 4-mintue deceleration of Baby Joshua's heart rate to as low as 60 bpm.

5.      Subsequently, Baby Joshua's heart rate recovered, and the electronic fetal monitor documented a Category I fetal heart tracing up until 5:43 p.m.

2

Case ID: 191201095
Case ID: 191201095

6.    Sometime just before 5:48 p.m., Mrs. Lopez DaSilva was taken to the operating room for a repeat C-section.

7.    At approximately 6:03 p.m., shortly after the administration of spinal anesthesia in the operating room, Defendants documented that Baby Joshua's heart rate dropped to a dangerously low bradycardic level of 60 beats per minute ("bpm").

8.    By 6:05 p.m., Defendants could not detect Baby Joshua's heart rate at all.

9.    Despite the evidence of fetal distress, and even though Mrs. Lopez DaSilva had been in the hospital for more than three (3) hours and there had been a prior bradycardic episode at approximately 3:30 p.m. that should have put Defendants on notice of a potential issue, and notwithstanding the fact Mrs. Lopez DaSilva was already in the operating room and anesthetized for her scheduled C-section, Defendants inexplicably delayed delivery for more than ten minutes and failed to take emergent action to get Baby Joshua out.

10.    Finally, at 6:17 p.m., Baby Joshua was delivered.

11.    But it was too late.

12.    At delivery, Baby Joshua's lifeless body was flaccid and blue.

13.    His initial heart rate was bradycardic at 64 bpm.

14.    Baby Joshua's APGAR scores were 1 at one minute, 2 at five minutes, 2 at ten minutes, 2 at fifteen minutes, and 2 at twenty minutes.

15.    He was emergently transferred to the NICU, where he underwent resuscitation and intubation before being transferred to St. Christopher's Hospital for Children for further evaluation and treatment.

16.    Baby Joshua's injuries were the direct consequence of Defendants' failure to act promptly and emergently deliver Baby Joshua via C-section in the face of evident fetal distress.

3

17.     Defendants' unfathomable decision to delay delivery for nearly 15 minutes needlessly deprived Baby Joshua's brain of oxygen.

18.     Defendants' dangerous decision to delay delivery led to Baby Joshua's severe and permanent injuries.

19.     Through this action, Plaintiffs Andreza Lopez DaSilva and Jose DaSilva seek compensatory and punitive damages on behalf of their minor son, Joshua DaSilva, who sustained severe, permanent, and profoundly disabling injuries at birth due to Defendants' failure to promptly deliver him in the face of evident fetal distress.

## PARTIES

20.     Plaintiffs **Andreza Lopez DaSilva and Jose DaSilva** are the parents and natural guardians of Joshua DaSilva, a minor, and reside at 3305 Oakmont Street, Philadelphia, PA 19136.

21.     Defendant, **Temple University Hospital, Inc. a/k/a d/b/a Temple University Hospital ("TUH")**, is a Pennsylvania corporation, partnership, and/or other entity which provides training and instruction to medical students, interns, residents and fellows at Temple University Hospital operating and existing in accordance with the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

22.     At all relevant and material times, TUH acted by and through its directors, officers, shareholders, employees, physicians, nurses, staff members and/or its agents who were acting within the course and scope of their agency and/or within the right of its control, including the other named defendants herein and the physicians, residents, nurses and other staff responsible for the care and treatment of Joshua DaSilva on December 13, 2017.

Case ID: 191201095
Case ID: 191201095

23.     At all relevant and material times, TUH was and is vicariously liable and/or ostensibly liable for the acts and/or omissions of its directors, officers, employees, physicians, nurses, staff members and/or its agents who were acting within the course and scope of its agency and/or within its right of control including, but not limited to Dr. Jagannathan, Dr. Martin, and Nurse Fernandes.

24.     Plaintiffs are asserting professional liability and corporate negligence claims against TUH.

25.     Defendant, **Temple University Health System, Inc.,** is a Pennsylvania corporation, partnership, and/or other entity which provides training and instruction to medical students, interns, residents and fellows at Temple University Hospital operating and existing in accordance with the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

26.     At all relevant and material times, Temple University Health System, Inc., acted by and through its directors, officers, shareholders, employees, physicians, nurses, staff members and/or its agents who were acting within the course and scope of their agency and/or within the right of its control, including the other named defendants herein and the physicians, residents, nurses and other staff responsible for the care and treatment of Joshua DaSilva on December 13, 2017.

27.     At all relevant and material times, Temple University Health System, Inc. was and is vicariously liable and/or ostensibly liable for the acts and/or omissions of its directors, officers, employees, physicians, nurses, staff members and/or its agents who were acting within the course and scope of its agency and/or within its right of control including, but not limited to Dr. Jagannathan, Dr. Martin, and Nurse Fernandes.

5

28.     Plaintiffs are asserting professional liability and corporate negligence claims against Temple University Health System, Inc.

29.     Defendant, **Temple University Hospital Department of Obstetrics & Gynecology**, is and was at all times relevant and material hereto, a Pennsylvania corporation, partnership, and/or other entity, organized and existing under the laws of the Commonwealth of Pennsylvania, engaged in the provision of medical and health care services with a principal place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

30.     At all times relevant and material hereto Defendant, Temple University Hospital Department of Obstetrics & Gynecology, acted individually and/or by and through its agents, ostensible agents, staff, employees, residents, physicians, fellows, medical students, including Dr. Jagannathan, Dr. Martin, and Nurse Fernandes, and/or contractors who were acting with actual or implied authority to act within the course and scope of their employment and/or agency or ostensible agency relationship and the scope of their authority in the furtherance of the business and practice of Temple University Hospital Department of Obstetrics & Gynecology.

31.     Plaintiffs are asserting a professional liability claim against Temple University Hospital Department of Obstetrics & Gynecology.

32.     Defendant, **Samantha Jagannathan, M.D. ("Dr. Jagannathan")** is a physician who was licensed to practice medicine in the Commonwealth of Pennsylvania, having a regular place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

33.     At all times relevant and material hereto, Dr. Jagannathan held herself out as a specialist in the field of Obstetrics and Gynecology and was engaged in the practice of his profession at TUH. At all times material hereto, Dr. Jagannathan was the agent, servant, employee

6

and/or ostensible agent of TUH, Temple University Health System, Inc., and/or Temple University Hospital Department of Obstetrics & Gynecology.

34.   Plaintiffs are asserting a professional liability claim against Dr. Jagannathan.

35.   Defendant, **Sarah Martin, M.D. ("Dr. Martin")** is a physician who was licensed to practice medicine in the Commonwealth of Pennsylvania, having a regular place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

36.   At all times relevant and material hereto, Dr. Martin held herself out as a specialist in the field of Obstetrics and Gynecology and was engaged in the practice of his profession at TUH. At all times material hereto, Dr. Martin was the agent, servant, employee and/or ostensible agent of TUH, Temple University Health System, Inc., and/or Temple University Hospital Department of Obstetrics & Gynecology.

37.   Plaintiffs are asserting a professional liability claim against Dr. Martin.

38.   Defendant, **Micaela Fernandes, R.N.,** at all times relevant and material hereto, was a member of the Nursing staff of Defendant TUH who provided nursing care to Andreza Lopez DaSilva and Joshua DaSilva at Defendant TUH.

39.   At all times relevant and material hereto, Defendant, Nurse Fernandes was an agent, employee, servant, workman, staff member, resident and/or ostensible agent of Defendant TUH, Temple University Health System, Inc., and/or Temple University Hospital Department of Obstetrics & Gynecology.

40.   At all relevant and material times hereto, Andreza Lopez DaSilva and Joshua DaSilva were patients of Defendants.

41.   An appropriate licensed professional has concluded that the care, skill, or knowledge exhibited by the Defendants, jointly and/or severally, deviated from or fell outside

7

professional standard and that such conduct was a substantial factor or increased the risk of harm

to Plaintiffs. Certificates of Merit against the Defendants are attached collectively hereto as

**Exhibit A.**

## FACTUAL ALLEGATIONS

42.    Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set

forth at length herein.

43.    On December 13, 2017, at approximately 3:00 p.m., Plaintiffs presented to TUH

for a scheduled C-section of their fourth child, Joshua DaSilva.

44.    At the time of her presentation, Mrs. Lopez DaSilva came under the care of Dr.

Turner, the attending physician, Dr. Saperstein, a resident, and Nurse Fernandes.

45.    During the placement of an IV at approximately 3:30 p.m. by Nurse Fernandes,

there was evidence of a prolonged 4-mintue deceleration of Baby Joshua's heart rate to as low as

60 bpm.

46.    At approximately 4:00 p.m., Dr. Saperstein documented the incident as follows:

**History of Present Illness**
25 y.o. G4P3003@ 39w0d by 9w5d us admitted for repeat c-section. Patient reports
good fetal movement. Denies vaginal bleeding, loss of fluid or contractions. Denies
HA, visual changes or RUQ pain.

While being admitted and having IV drawn, patient had 4-minute fetal heart
deceleration to the 60s, with spontaneous return to baseline with after repositioning.
Patient at the time was lying down and started to feel warm but not lightheaded or
dizzy.

47.    Nurse Fernandes  documented the incident in her nursing note, stating:

Attempted to place peripheral IV while patient lying on back with HOB at 30
degrees, placed spotlight on patient for better visualization, patient became
tachycardic and diaphoretic. Loss of signal with FHR tracing and then prolonged
FHR deceleration to 60. Patient's blood pressure within normal limits. Cousin at the
bedside translating. Patient denied feeling dizzy and denied feeling like she was
going to pass out. Patient rolled to right side and then left side, oxygen mask 10

8

liters placed. FHR returned to baseline. Dr. Saperstein at bedside. Dr. Turner made aware of event. Will start an IV NS fluid bolus. Will continue to monitor.

48.   Dr. Turner further documented in his Attending Attestation note at 5:56 p.m. the following:

> I saw and examined the patient and agree with the resident's note. 25 y.o. G4P3003 @ 39w0d by 9w5d us [sic] admitted for repeat c-section, BTL. OB history pertinent for SVD x 1 and C/S x 2. Patient reports good fetal movement. Denies vaginal bleeding, loss of fluid or contractions. Uncomplicated AP course. +vagal episode during IV placement. With associated fetal decel. That ressolved [sic] with position change, IV hydration, and 02. Now with FHT's 150's/ cat. 1 tracing.

49.   Subsequently, the electronic fetal monitor documented a Category I fetal heart tracing up until approximately 5:43 p.m.

50.   Sometime just before 5:48 p.m., Defendants transported Mrs. Lopez DaSilva to the operating room for a repeat C-section.

51.   Dr. Turner performed the C-section.

52.   Dr. Jagannathan assisted Dr. Turner.

53.   Nurse Fernandes was also present in the operating room at the time of the C-section.

54.   At 5:58 p.m., Drs. Koers and Ligouri performed the insertion of spinal anesthesia without complication.

55.   Prior to the administration of spinal anesthesia, Dr. Turner documented fetal heart tracings in the 130s.

56.   Following the administration of the spinal anesthesia, Dr. Turner again documented fetal heart tracings in the 130s.

57.   At 6:03 p.m., the anesthesia team reported "Anesthesia ready."

58.   Shortly after 6:04 p.m., however, Dr. Turner noted that there was a spontaneous deceleration in which the fetal heart rate fell to a bradycardic level of as low as 60 bpm with a

Case ID: 191201095
Case ID: 191201095

small increase to the 80 bpm before subsequently becoming undetectable.

59.     Defendants then inexplicably attempted to search for the fetal heart rate using an ultrasound wand despite the prior bradycardic event, the fact the C-section was already planned, and the patient was anesthetized and ready for surgery.

60.     In her note, Dr. Jagannathan documented the following:

> Drs. Turner and I discussed events surrounding STAT c-section and newborn status. We explained that after epidural placement, FHT were noted to be low and in the 80s. While preparing for STAT c-section, a US was placed and FHT were still unable to be confirmed.

61.     Moreover, Nurse Fernandes noted that following the fetal heart rate deceleration to 60 bpm, there was difficulty in obtaining the fetal heart rate.

62.     Nurse Fernandes further stated that the ultrasound was deferred, and Dr. Turner proceeded with an emergent C-section.

63.     At 6:11 p.m., Dr. Turner requested via text message that Dr. Martin, a resident, report to the operating room to assist with the procedure due to the fetal bradycardia.

64.     Dr. Turner further documented at 6:11 p.m. that he completed prepping and draping the patient.

65.     At 6:12 p.m., Dr. Martin was reported to be in the operating room along with Nurse Jackson.

66.     At 6:14 p.m., nearly ten minutes after the documented evidence of an abrupt deceleration to 60 bpm followed by a loss of the fetal heart rate, Dr. Turner made the first incision.

67.     Baby Joshua was delivered at 6:17 p.m.

68.     Baby Joshua was without oxygen for at least 13 minutes prior to his delivery.

69.     At the time of delivery, Baby Joshua was limp, blue, and apneic.

70.     Baby Joshua had an initial heart rate of less than 100 bpm.

10

71.    Baby Joshua required resuscitation and intubation.

72.    Baby Joshua's APGAR scores were 1 at one minute, 2 at five minutes, 2 at ten minutes, and 2 at fifteen minutes.

73.    Blood gasses drawn at the time of delivery revealed severe metabolic acidosis.

74.    Baby Joshua was intubated and transferred to the NICU.

75.    At 10:05 p.m., Baby Joshua was transferred to St. Christopher's Hospital with an admitting diagnosis of severe hypoxic ischemic encephalopathy (HIE), respiratory failure, persistent pulmonary hypotension of the newborn (PPHN), left ventricular dysfunction, pulmonary hemorrhage, metabolic acidosis, presumed sepsis, hemodynamic instability, and hyperglycemia.

76.    On January 12, 2018, Baby Joshua underwent genetic testing; the results of which came back as normal.

77.    On February 2, 2018, Baby Joshua was discharged home.

78.    At the time of his discharge, Baby Joshua's diagnosis was HIE, pulmonary hypertension, chronic lung disease, and horseshoe kidney.

79.    The injuries that Baby Joshua sustained on December 13, 2017, were caused by the negligence and carelessness of the Defendants herein jointly and severally, and not by any act or omission on the part of Plaintiffs.

80.    As a direct and proximate result of the prolonged oxygen deprivation suffered by Baby Joshua, which was caused by the negligence and carelessness of the Defendants herein, Baby Joshua was diagnosed with HIE, pulmonary hypertension, and chronic lung disease.

81.    As a direct and proximate result of the injuries caused by the negligence and carelessness of the Defendants, Baby Joshua is severely, permanently, and profoundly disabled.

82.    As a direct result of the injuries caused by the negligence and carelessness of the

11

Defendants, Baby Joshua has in the past and will continue to in the future to suffer physical, mental, psychological, and emotional pain, suffering, disfigurement, inconvenience, and embarrassment, and the loss of life's pleasures.

83.     As a direct and proximate result of the injuries caused by the negligence and carelessness of the Defendants, Plaintiffs have been forced to expend and will continue to into the future to expend large sums of money for medical care, surgical care, custodial care, medications, and therapies.

84.     As a direct and proximate result of the injuries caused by the negligence and carelessness of the Defendants, Baby Joshua has suffered a permanent and total impairment of his earnings and earning capacity, to his great financial detriment and loss, which continue permanently into the future.

## THE CAUSES OF ACTION AND CLAIMS

### COUNT I – NEGLIGENCE
### PLAINTIFFS v. SAMANTHA JAGANNATHAN, M.D., AND SARAH MARTIN, M.D.

85.     Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

86.     Defendants were physicians at TUH who undertook to diagnose, treat and otherwise care for Plaintiff Andreza Lopez DaSilva and Baby Joshua in Labor & Delivery on or about December 13, 2017, in the course of their duties at TUH.

87.     Defendants undertook the aforesaid care of Plaintiffs Andreza Lopez DaSilva and Baby Joshua with the knowledge and intention that Plaintiffs would rely on their opinions, training and experience in regard to medical care rendered to Plaintiffs during the course and care of their treatment in the Labor & Delivery Department at TUH on December 13, 2017.

88.     Defendants undertook the aforesaid care of Plaintiffs for compensation rendered by

Case ID: 191201095
Case ID: 191201095

Plaintiffs or on their behalf.

89.    Defendant Dr. Jagannathan held herself out to Plaintiffs and the public as an expert in obstetrics and gynecological medicine.

90.    Defendant Dr. Martin herself out to Plaintiffs and the public as an expert in obstetrics and gynecological medicine.

91.    Defendants owed a duty of care to Plaintiffs and Baby Joshua, which was breached to their great detriment.

92.    Defendants had a duty to provide medical care and treatment in a safe manner and in accordance with good and acceptable medical standards.

93.    Defendants breached their duty of care to Plaintiffs and Baby Joshua by numerous acts and/or omissions, including but not limited to:

    a.  Failure to emergently perform a C-section in the face of fetal distress and instead inexplicably delaying delivery, thereby placing Baby Joshua in imminent danger;

    b.  Failure to take prompt and appropriate action upon the appearance of the signs and symptoms of fetal distress;

    c.  Failure to take prompt and appropriate action upon the appearance of the signs and symptoms of fetal bradycardia;

    d.  Failure to properly interpret and adequately respond to the non-reassuring fetal heart tracings;

    e.  Failure to conduct appropriate and adequate fetal monitoring;

    f.  Failure to appropriately and adequately interpret fetal heart tracings;

    g.  Failure to consider the cause of Baby Joshua's fetal distress;

    h.  Failure to adequately and properly generate and retain the appropriate medical records, including the fetal monitoring strips;

13

Case ID: 191201095
Case ID: 191201095

i.  Disregarding the rules, policies, protocols, standards, and procedures regarding fetal distress;

j.  Improperly delaying the delivery of Baby Joshua on December 13, 2017, when there was evidence of fetal distress;

k.  Failure to perform a timely C-section delivery in the face of the signs and symptoms of fetal distress;

l.  Failing to properly and adequately assess the condition of Baby Joshua;

m.  Failure to properly and adequately record and document the condition of Baby Joshua;

n.  Failure to diagnose the anoxic brain injury suffered by Baby Joshua during the labor and delivery process;

o.  Failure to treat the anoxic injuries sustained by Baby Joshua during the labor the delivery process;

p.  Failure to adequately assess Baby Joshua for injury to the brain;

q.  Disregarding the rules, policies, protocols, standards, and procedures regarding fetal monitoring;

r.  Disregarding the rules, polices, protocols, standards, and procedures regarding fetal distress; and

s.  Such other acts or omissions of negligence and/or carelessness which may become apparent during discovery or the trial of this case.

94.    As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Defendants as set forth above, Baby Joshua was caused to suffer injuries, losses, and damages, including:

a.  Severe Hypoxic Ischemic Encephalopathy (HIE);

b.  Metabolic acidosis;

14

Case ID: 191201095
Case ID: 191201095

    c.   Respiratory failure;

    d.   Persistent Newborn Pulmonary Hypertension (PPHN)

    e.   Left ventricular systolic dysfunction;

    f.   Pulmonary hemorrhage;

    g.   Neonatal adrenal hemorrhage;

    h.   Hemodynamic instability;

    i.   Hyperglycemia; and

    j.   Other severe and permanent injuries.

95.    The negligence and carelessness of the Defendants, as described above, increased the risk of harm and was a proximate cause of the injuries and damages suffered by the minor Plaintiff, Joshua DaSilva.

96.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, sustained severe and permanent injuries, the full extent of which injuries are not yet known.

97.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, suffered severe pain, suffering, inconvenience, psychological pain, and has been deprived of life's pleasures.

98.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has incurred and will continue to incur in the future, expenses for medical treatment and care, surgeries, therapies, and custodial care, for an indefinite period of time.

99.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has suffered and will continue to suffer the loss of earnings and

15

earning capacity as a result of his disability for life.

WHEREFORE, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest, costs, attorneys' fees, and any other relief this Court deems just and proper.

## COUNT II – NEGLIGENCE
## PLAINTIFFS v. MICAELA FERNANDES, R.N.

100.    Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

101.    Defendant, Miacela Fernandes R.N., undertook to provide nursing care to the Plaintiffs, Andreza Lopez DaSilva and Baby Joshua, by and through her association with and/or employment by Defendant TUH.

102.    Neither Plaintiff, Andreza Lopez DaSilva, nor Plaintiff Baby Joshua chose or requested the care of Nurse Fernandes, but rather looked to the Defendant TUH, and accepted the medical care and services provided by and at the Defendant TUH's agents, servants, employees and/or ostensible agents, including Nurse Fernandes.

103.    Plaintiffs relied upon the medical knowledge, treatment, and advice of the Defendant Nurse Fernandes.

104.    Defendant Nurse Fernandes undertook the care of the Plaintiffs for compensation rendered by the Plaintiffs or on their behalf.

105.    Defendant Nurse Fernandes held herself out to the Plaintiffs and the public as experts in labor and delivery nursing care.

106.    Defendants Nurse Fernandes owed a duty of care to the Plaintiffs, which was breached, causing severe and permanent injury to the minor Plaintiff, Joshua DaSilva.

16

107. The injuries to the minor Plaintiff, Joshua DaSilva, were the direct result of the negligence and carelessness of the Defendant Nurse Fernandes including, but not limited to the following:

   a. Failure to conduct appropriate and adequate fetal monitoring;

   b. Failure to appropriately and adequately interpret the fetal monitoring results;

   c. Failure to adequately respond to data recorded on the fetal monitor and tracings;

   d. Failure to take appropriate actions upon the appearance of the signs and symptoms of fetal distress;

   e. Failure to properly and adequately document the conditions of Plaintiff, Andreza Lopez DaSilva, and the minor Plaintiff, Joshua DaSilva and the medical and surgical treatments rendered, as required by the accepted rules, regulations, standards, guidelines, protocols, and procedures;

   f. Disregarding the rules, protocols, standards, and procedures regarding fetal monitoring;

   g. Disregarding the rules, policies, protocols, standards, and procedures regarding medical documentation;

   h. Disregarding the rules, policies, protocols, standards, and procedures regarding fetal distress;

   i. Improperly positioning Plaintiff Andreza Lopez DaSilva during the IV placement;

   j. Improperly administering 800 ml IV bolus of glucose where there is no physician's order for the glucose;

   k. Failure to take prompt and adequate action to ensure Plaintiffs were adequately treated and cared for by Defendant TUH physicians and Defendant TUH;

   l. Such other acts or omissions of negligence, carelessness and/or recklessness as may become apparent during the course of discovery or at the trial of this cause.

108. As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Defendants as set forth above, Baby Joshua was caused to suffer injuries, losses, and damages, including:

17

Case ID: 191201095
Case ID: 191201095

    a.   Severe Hypoxic Ischemic Encephalopathy (HIE);

    b.   Metabolic acidosis;

    c.   Respiratory failure;

    d.   Persistent Newborn Pulmonary Hypertension (PPHN)

    e.   Left ventricular systolic dysfunction;

    f.   Pulmonary hemorrhage;

    g.   Neonatal adrenal hemorrhage;

    h.   Hemodynamic instability;

    i.   Hyperglycemia; and

    j.   Other severe and permanent injuries.

109.   The negligence and carelessness of the Defendants, as described above, increased the risk of harm and was a proximate cause of the injuries and damages suffered by the minor Plaintiff, Joshua DaSilva.

110.   As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, sustained severe and permanent injuries, the full extent of which injuries are not yet known.

111.   As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, suffered severe pain, suffering, inconvenience, psychological pain, and has been deprived of life's pleasures.

112.   As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has incurred and will continue to incur in the future, expenses for medical treatment and care, surgeries, therapies, and custodial care, for an indefinite period of time.

Case ID: 191201095
Case ID: 191201095

113.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has suffered and will continue to suffer the loss of earnings and earning capacity as a result of his disability for life.

WHEREFORE, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest, costs, attorneys' fees, and any other relief this Court deems just and proper.

<div align="center">

**COUNT III - VICARIOUS LIABILITY**
**PLAINTIFFS v. TEMPLE UNIVESITY HOSPITAL INC. A/K/A D/B/A**
**TEMPLE UNIVERSITY HOSPITAL, TEMPLE UNIVERSITY HEALTH SYSTEM,**
**INC., AND TEMPLE UNIVERSITY HOSPITAL DEPARTMENT**
**OF OBSTETRICS, GYNECOLOGY**

</div>

114.    Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

115.    At all times relevant and material hereto, Defendants, Temple University Inc., a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., and Temple University Hospital Department of Obstetrics and Gynecology, acted through their agents, ostensible agents, staff, servants, employees, residents, physicians, fellows, medical students, nurse practitioners, nurses, physician assistants, technicians, and/or contractors, including Dr. Jagannathan, Dr. Martin, and Nurse Fernandes.

116.    At all times relevant and material hereto, the agents, ostensible agents, staff, servants, employees, residents, physicians, fellows, medical students, nurse practitioners, nurses, physician assistants, technicians, and/or contractors, including Dr. Jagannathan, Dr. Martin, and Nurse Fernandes, were acting in the course and scope of their employment with Defendants Temple University Inc., a/k/a d/b/a Temple University Hospital, Temple University Health

<div align="center">19</div>

System, Inc., and Temple University Hospital Department of Obstetrics and Gynecology.

117.    Defendants are vicariously liable for the actions and inactions of their agents, ostensible agents, staff, servants, employees, residents, physicians, fellows, medical students, nurse practitioners, nurses, physician assistants, technicians, and/or contractors, including Dr. Jagannathan, Dr. Martin, and Nurse Fernandes.

118.    The agents and ostensible agents of Defendants are identified in the medical records for Mrs. Lopez DaSilva and Baby Joshua DaSilva's admission to TUH on December 13, 2017 through December 14, 2017.

119.    The injuries to the minor Plaintiff, Joshua DaSilva, were the direct result of the negligence and carelessness of the Defendants including, but not limited to the following:

      a.  Failure to emergently perform a C-section in the face of fetal distress and instead inexplicably delaying delivery, thereby placing Baby Joshua in imminent danger;

      b.  Failure to take prompt and appropriate action upon the appearance of the signs and symptoms of fetal distress;

      c.  Failure to take prompt and appropriate action upon the appearance of the signs and symptoms of fetal bradycardia;

      d.  Failure to properly interpret and adequately respond to the non-reassuring fetal heart tracings;

      e.  Failure to conduct appropriate and adequate fetal monitoring;

      f.  Failure to appropriately and adequately interpret fetal heart tracings;

      g.  Failure to consider the cause of Baby Joshua's fetal distress;

      h.  Failure to adequately and properly generate and retain the appropriate medical records, including the fetal monitoring strips;

20

Case ID: 191201095
Case ID: 191201095

i.   Failure to formulate, adopt, and enforce adequate rules, policies, protocols, standards, and procedures regarding the diagnosis and treatment of fetal distress;

j.   Disregarding the rules, policies, protocols, standards, and procedures regarding fetal distress;

k.   Improperly delaying the delivery of Baby Joshua on December 13, 2017, when there was evidence of fetal distress;

l.   Failure to perform a timely C-section delivery in the face of the signs and symptoms of fetal distress;

m.  Failing to properly and adequately assess the condition of Baby Joshua;

n.   Failure to properly and adequately record and document the condition of Baby Joshua;

o.   Failure to diagnose the anoxic brain injury suffered by Baby Joshua during the labor and delivery process;

p.   Failure to treat the anoxic injuries sustained by Baby Joshua during the labor the delivery process;

q.   Failure to adequately assess Baby Joshua for injury to the brain;

r.   Disregarding the rules, policies, protocols, standards, and procedures regarding fetal monitoring;

s.   Disregarding the rules, polices, protocols, standards, and procedures regarding fetal distress; and

t.   Disregarding the rules, policies, protocols, standards, and procedures regarding medical documentation;

u.   Disregarding the rules, policies, protocols, standards, and procedures regarding fetal distress;

v.   Improperly positioning Plaintiff Andreza Lopez DaSilva during the IV placement;

w.  Improperly administering 800 ml IV bolus of glucose where there is no

Case ID: 191201095
Case ID: 191201095

physician's order for the glucose;

    x.  Such other acts or omissions of negligence and/or carelessness which may become apparent during discovery or the trial of this case.

120.    As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Defendants as set forth above, Baby Joshua was caused to suffer injuries, losses, and damages, including:

    a.  Severe Hypoxic Ischemic Encephalopathy (HIE);

    b.  Metabolic acidosis;

    c.  Respiratory failure;

    d.  Persistent Newborn Pulmonary Hypertension (PPHN)

    e.  Left ventricular systolic dysfunction;

    f.  Pulmonary hemorrhage;

    g.  Neonatal adrenal hemorrhage;

    h.  Hemodynamic instability;

    i.  Hyperglycemia; and

    j.  Other severe and permanent injuries.

121.    The negligence and carelessness of the Defendants, as described above, increased the risk of harm and was a proximate cause of the injuries and damages suffered by the minor Plaintiff, Joshua DaSilva.

122.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, sustained severe and permanent injuries, the full extent of which injuries are not yet known.

123.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, suffered severe pain, suffering, inconvenience, psychological

Case ID: 191201095
Case ID: 191201095

pain, and has been deprived of life's pleasures.

124.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has incurred and will continue to incur in the future, expenses for medical treatment and care, surgeries, therapies, and custodial care, for an indefinite period of time.

125.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has suffered and will continue to suffer the loss of earnings and earning capacity as a result of his disability for life.

**WHEREFORE**, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest, costs, attorneys' fees, and any other relief this Court deems just and proper.

### COUNT IV - CORPORATE NEGLIGENCE
### PLAINTIFFS v. TEMPLE UNIVESITY HOSPITAL INC. A/K/A D/B/A
### TEMPLE UNIVERSITY HOSPITAL, TEMPLE UNIVERSITY HEALTH SYSTEM,
### INC., AND TEMPLE UNIVERSITY HOSPITAL DEPARTMENT
### OF OBSTETRICS, GYNECOLOGY

126.    Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

127.    Defendants Temple University Inc., a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., and Temple University Hospital Department of Obstetrics and Gynecology undertook the care of Mrs. Lopez DaSilva and Baby Joshua DaSilva with the knowledge and intention tha Plaintiffs would rely on their opinions, training and experience, and that of agents, ostensible agents, staff, servants, employees, residents, physicians, fellows, medical students, nurse practitioners, nurses, physicians assistants, technicians and/or contractors in the medical care rendered to Plaintiffs during the course of their care and treatment.

23

128.    Defendants undertook the aforesaid care and treatment of Mrs. Lopez DaSilva and Baby Joshua DaSilva for compensation rendered by Plaintiffs or on their behalf.

129.    Defendants held themselves out to Plaintiffs and the public as a specialized university teaching hospital.

130.    Defendants owed a duty of care to Plaintiffs which was breached to their great detriment.

131.    Defendants had a duty to Plaintiffs to provide medical care and treatment in a safe manner and in accordance with good and acceptable medical standards.

132.    Defendants breached its duty of care to Plaintiffs by numerous acts and/or omissions, including but not limited to:

    a.   Failing to select and retain only competent physicians;

    b.   Failing to select and retain only competent nurses;

    c.   Failing to select and retain only competent physician's assistants;

    d.   Failing to select and retain only competent residents;

    e.   Failing to select and retain only competent fellows;

    f.   Failing to select and retain only competent technicians;

    g.   Failing to properly oversee all persons who practice medicine and nursing within the medical facility;

    h.   Failing to formulate, adopt, and enforce appropriate rules, policies, and procedures, so as to ensure quality care for patients;

    i.   Failing to properly train doctors, nurses, physician's assistants, and staff to properly care for patients;

    j.   Failing to properly train doctors, nurses, physician's assistants, and staff to use due care under the circumstances;

    k.   Failing to properly and appropriately supervise their agents, servants, employees and/or ostensible agents;

24

Case ID: 191201095
Case ID: 191201095

l.  Failing to properly train doctors, residents, fellows, nurses, physician's assistants, and staff to regarding fetal monitoring;

m.  Failing to properly doctors, residents, fellows, nurses, physician's assistants, and staff to react emergently where there is a deceleration followed by a loss of the baby's heart rate;

n.  Failing to properly train doctors, residents, fellows, nurses, physician's assistants, and staff to evaluate patients with evident fetal distress;

o.  Failing to properly train doctors, nurses, physician's assistants, and staff to properly monitor patients with evident fetal distress;

p.  Failing to properly train doctors, nurses, physician's assistants, and staff to take proper cognizance of the signs and symptoms of problems arising from fetal distress;

q.  Failing to properly train doctors, nurses, physician's assistants, and staff to communicate negative and/or poor outcomes to their patients regarding fetal distress;

r.  Failing to properly train doctors, nurses, physician's assistants, and staff to properly communicate critical patient information to other members of the medical team participating in the care and treatment of patients;

s.  Failing to formulate, adopt, and enforce adequate rules, procedures and policies to be followed by its physicians, fellows, residents, interns, students, physician's assistants, staff, personnel, nurses, nurse practitioners, technicians and/or independent contractors in connection with the monitoring, evaluation, diagnosis, and treatment and in general and in patients like Baby Joshua DaSilva and in particular with regard to fetal distress;

t.  Failing to formulate, adopt, and enforce policies and procedures about monitoring, and evaluating obstetrical patients;

u.  Failing to select and ensure that only competent and properly qualified, experienced and trained physicians, fellows, residents, interns, students, physician's assistants, staff, personnel, nurses, nurse practitioners, technicians and/or independent contractors diagnose, care for and treat patients with fetal distress;

v.  Failing to oversee, supervise and monitor all aspects of the care delivered by its physicians, fellows, residents, interns, students, physician's assistants, staff, personnel, nurses, nurse practitioners, technicians and/or independent contractors;

25

w. Failing to oversee and review the competence, qualifications and experience of persons practicing medicine and aiding in the delivery of medical care within its practice as to patient care;

x. Failing to maintain a safe and adequate medical practice for the care, protection and treatment of patients to ensure proper and timely diagnosis and treatment of the condition of patients and to ensure the timely and appropriate treatment of patient complaints;

y. Failing to properly supervise, oversee, monitor, manage, control and review ongoing medical and nursing care and services being provided within the medical practice to avoid risks of harm and complications to its patients;

z. Failing to have proper facilities, equipment and systems for the care of its patients;

aa. Failing to employ appropriate methods of quality assurance; and

bb. Failing to protect and safeguard the health and well-being of its patients, particularly Baby Joshua DaSilva.

133.    Defendants Temple University Inc., a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., and Temple University Hospital Department of Obstetrics and Gynecology knew, or should have known, that the foregoing deviations and insufficiencies in their policies and procedures could cause injuries, damages and/or harm to Plaintiffs and/or increased the risk of Plaintiffs from suffering the injuries, damages, and harms more fully set forth herein and incorporated by reference.

134.    Defendants foregoing deviations from accepted standards of care were factual causes of the injuries, damages and/or harm of Plaintiffs and/or increased the risks of Plaintiffs suffering the injuries, damages and/or harms more fully set forth herein and incorporated by reference.

**WHEREFORE**, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest,

Case ID: 191201095
Case ID: 191201095

costs, attorneys' fees, and any other relief this Court deems just and proper.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFFS v. ALL DEFENDANTS

135.   Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

136.   As a direct and proximate result of the negligence and carelessness of the Defendants, as more fully set forth hereinabove, Plaintiffs Andreza Lopez DaSilva and Jose DaSilva, were caused to see and experience first-hand the injury to their unborn child before, during, and after the labor and delivery.

137.   As a direct and proximate result of the negligence, carelessness and/or recklessness of the Defendants, as more fully set forth hereinabove, Plaintiffs Andreza Lopez DaSilva and Jose DaSilva, being in the zone of danger and present, and experiencing the negligence and carelessness first-hand and observing the injuries to the minor Plaintiff, as they happened, suffered a severe and permanent emotional injury, distress, shock to their nervous system and psychiatric and psychological disorder, resulting in severe depression, anxiety, and post-traumatic stress disorder, which with psychological and psychiatric injuries they have suffered and will continue to suffer for an indefinite period of time into the future, to their great detriment and loss.

138.   As a direct and proximate result of the negligence and carelessness of the Defendants, as more fully set forth hereinabove, Plaintiffs Andreza Lopez DaSilva and Jose DaSilva have been and will be required in the future, to expend money for medicine and medical attention, in an attempt to treat her severe emotional distress suffered as a result of the Defendants' acts.

**WHEREFORE,** Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in

Case ID: 191201095
Case ID: 191201095

an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest,

costs, attorneys' fees, and any other relief this Court deems just and proper.

Respectfully submitted,

**MESSA & ASSOCIATES, P.C.**

By:    /s/ Joseph L. Messa, Jr.
       Joseph L. Messa, Jr.
       Megan M. Kwak
       *Attorneys for Plaintiffs*

Date:  December  4 , 2019

28

Case ID: 191201095

## VERIFICATION

I, _____Andreza DaSilva_____, Plaintiff herein, make this Verification and state that the

statements made in the foregoing are true and correct to the best of my knowledge, information,

and belief.

I, the undersigned, understand that the statements therein are made subject to the

penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

_____Andreza Lopesdo Silva_____
                                                        Signature

Dated: __12/04/19__

## VERIFICATION

I, _____Jose DaSilva_____, Plaintiff herein, make this Verification and state that the statements made in the foregoing are true and correct to the best of my knowledge, information, and belief.

I, the undersigned, understand that the statements therein are made subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

_____
Signature

Dated:    12/04/19

# Exhibit "A"

Case ID: 191201095
Case ID: 191201095

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
     Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

**Attorneys for Plaintiff**

THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

                **Plaintiffs,**

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

MAY TERM, 2019

No. _____

SARAH MARTIN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

MICAELA FERNANDEZ, R.N.
3401 N. Broad St.
Philadelphia, PA 19140

Defendants.

## CERTIFICATE OF MERIT AS TO DEFENDANT TEMPLE UNIVERSITY HOSPITAL, INC. a/k/a d/b/a TEMPLE UNIVERSITY HOSPITAL

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

MESSA & ASSOCIATES, P.C.


By:   /s/ Megan M. Kwak
      Attorney for Plaintiffs

Dated: May 15, 2019

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
        Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

Attorneys for Plaintiff

THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.

---

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

                    Plaintiffs,

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

MAY TERM, 2019

No. _____

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

                    **Defendants.**

## CERTIFICATE OF MERIT AS TO DEFENDANT TEMPLE UNIVERSITY HEALTH SYSTEM, INC.

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                    MESSA & ASSOCIATES, P.C.


                    By:    /s/ Megan M. Kwak
Dated: May 15, 2019            Attorney for Plaintiffs

MESSA & ASSOCIATES, P.C.                Attorneys for Plaintiff
By: Joseph L. Messa, Jr., Esquire
     Megan M. Kwak, Esquire               THIS IS NOT AN ARBITRATION
Attorney I.D. Nos.: 53645/313946          CASE. ASSESSMENT OF
123 South 22ⁿᵈ Street                          DAMAGES HEARING IS
Philadelphia, Pa. 19103                      REQUIRED. MAJOR JURY.
(215) 568-3500 / Fax: (215) 568-3501

---

JOSHUA DA SILVA, by and through his     PHILADELPHIA COUNTY
parents and legal guardians, ANDREZA    COURT OF COMMON PLEAS
LOPEZ DASILVA and JOSE DASILVA

            Plaintiffs,               MAY TERM, 2019

vs.

                              No. _____
TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

                    **Defendants.**

## CERTIFICATE OF MERIT AS TO DEFENDANT TEMPLE UNIVERSITY HOSPITAL DEPARTMENT OF OBSTETRICS, GYNECOLOGY

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                    **MESSA & ASSOCIATES, P.C.**

                    By:    /s/ Megan M. Kwak
Dated: May 15, 2019            Attorney for Plaintiffs

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
    Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22ⁿᵈ Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

Attorneys for Plaintiff

THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

            Plaintiffs,

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

MAY TERM, 2019

No. _____

Case ID: 191201095
Case ID: 191201095

SARAH MARTIN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

MICAELA FERNANDEZ, R.N.
3401 N. Broad St.
Philadelphia, PA 19140

                **Defendants.**

## CERTIFICATE OF MERIT AS TO DEFENDANT SAMANTHA JAGANNATHAN, M.D.

    I, Megan M. Kwak, Esquire, certify that:

    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

    The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                              MESSA & ASSOCIATES, P.C.

                              By:    /s/ Megan M. Kwak
                                      Attorney for Plaintiffs

Dated: May 15, 2019

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
    Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22ⁿᵈ Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

Attorneys for Plaintiff

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

---

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

                Plaintiffs,

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

MAY TERM, 2019

No. _____

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

                    **Defendants.**

<u>**CERTIFICATE OF MERIT AS TO DEFENDANT SARAH MARTIN, M.D.**</u>

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                    **MESSA & ASSOCIATES, P.C.**

                    By:   /s/ Megan M. Kwak
Dated: May 15, 2019          Attorney for Plaintiffs

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
       Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

Attorneys for Plaintiff

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

              Plaintiffs,

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

MAY TERM, 2019

No. _____

Case ID: 191201095
Case ID: 191201095

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

              **Defendants.**

<u>CERTIFICATE OF MERIT AS TO DEFENDANT MICAELA FERNANDEZ, R.N.</u>

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

MESSA & ASSOCIATES, P.C.

By:   <u>/s/ Megan M. Kwak</u>
      Attorney for Plaintiffs

Dated: May 15, 2019

Case ID: 191201095
Case ID: 191201095

# EXHIBIT 2



**ATTORNEYS AT LAW**

1880 John F. Kennedy Boulevard
10th Floor
Philadelphia, PA 19103

t: 215.587.1600
f: 215.587.1699

w: www.burnswhite.com

Adrianna Yanez
Attorney at Law

(215) 587-1605
ayanez@burnswhite.com

January 17, 2020

**VIA PROCESS SERVER**
Clinton A. Turner, M.D.
Delaware Valley Community Health
401 W Allegheny Ave
Philadelphia PA 19133

      Re:    **DaSilva v. Temple et al.**
              **PCCP December Term, No: 1095**

Dear Dr. Turner:

      Enclosed please find a Joinder Complaint against you that was electronically filed with the Court on this date in the above-captioned matter. Please be guided accordingly.

                          Very truly yours,

                          Adrianna Yanez

AMY/acc
Enclosure
cc:     Joseph L. Messa, Esquire/Megan M. Kwak, Esquire
        Colin Cherico, Esquire/ US Attorney's Office
        Richard S. Margulies, Esquire

1221393.v1

Burns White
A Limited Liability Company

BURNS WHITE
By: James A. Young, Esq.
    Richard S. Margulies, Esq.
    Adrianna M. Yanez, Esq.
Attorney ID Nos. 00213/62306/309255
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA 19103
215-587-1625/1628/1605
jayoung@burnswhite.com
rsmargulies@burnswhite.com
ayanez@burnswhite.com

Attorneys For Defendants and Attested by the
Temple University Hospital, Inc. Records
d/b/a Temple University Hospital, Nov 2020 11:39 am
Temple University Health System, R. SORIAN
Temple University Hospital Department
of Obstetrics, Gynecology, Samantha
Jagannathan, M.D., Sarah Martin, M.D.
and Micaela Fernandes, R.N.

---

JD, by and through his
parents and legal guardians, ANDREZA LOPEZ
and JOSE DaSILVA

vs.

TEMPLE UNIVERSITY HOSPITAL, INC., et al

COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

DECEMBER TERM, 2019
NO. 1095

---

## JOINDER COMPLAINT DIRECTED TO ADDITIONAL DEFENDANT, CLINTON A. TURNER, M.D.

### NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone: 215-238-1701

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME FOR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: 215-238-1701

1220898.v1

Case ID: 191201095

BURNS WHITE
By: James A. Young, Esq.
    Richard S. Margulies, Esq.
    Adrianna M. Yanez, Esq.
Attorney ID Nos. 00213/62306/309255
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA 19103
215-587-1625/1628/1605
jayoung@burnswhite.com
rsmargulies@burnswhite.com
ayanez@burnswhite.com

Attorneys For Defendants,
Temple University Hospital, Inc. a/k/a
d/b/a Temple University Hospital,
Temple University Health System, Inc.,
Temple University Hospital Department
of Obstetrics, Gynecology, Samantha
Jagannathan, M.D., Sarah Martin, M.D.
and Micaela Fernandes, R.N.

| | |
|---|---|
| JD, by and through his<br>parents and legal guardians, ANDREZA LOPEZ<br>and JOSE DaSILVA | COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY |
| vs. | |
| TEMPLE UNIVERSITY HOSPITAL, INC., et al | DECEMBER TERM, 2019<br>NO. 1095 |

## JOINDER COMPLAINT

Defendants, Temple University Hospital, Inc. a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., Temple University Hospital Department of Obstetrics, Gynecology, Samantha Jagannathan, M.D., Sarah Martin, M.D. and Micaela Fernandes, R.N. (hereinafter "Original Defendants") by and through their counsel, Burns White, hereby aver as follows:

1.    Plaintiffs instituted this medical malpractice action by the filing of a Complaint on December 6, 2019. Service was effected on all named defendants on December 17, 2019 and January 8, 2020, along with certificates of merit. See Plaintiff's Complaint attached hereto as Exhibit "A".

2.    This matter involves allegations of medical negligence with regard to care provided to Plaintiff, Andreza Lopez DaSilva on December 13, 2017, including with regard to the performance of a cesarean section. Plaintiffs aver that the Original Defendants' alleged failure to

properly and timely deliver Ms. Lopez DaSilva's baby led to the minor child suffering from severe Hypoxic Ischemic Encephalopathy, respiratory failure, hypertension and metabolic acidosis. See Exhibit "A."

3.    Specifically, Plaintiffs allege that on December 13, 2017, Mrs. Lopez DaSilva presented to Temple University Hospital and came under the care of Clinton A. Turner, MD, among other hospital providers. See Exhibit "A."

4.    Dr. Turner was Ms. Lopez DaSilva's attending physician during the hospital admission and performed the cesarean section on Ms. Lopez DaSilva. See Exhibit "A."

5.    During the time that Dr. Turner was treating Ms. Lopez DaSilva, he was not an employee or agent of Original Defendants.

6.    Original Defendants assert that if Plaintiffs' claims are proven, specifically for any care by Dr. Turner, all allegations being specifically denied, then Additional Defendant, Clinton A. Turner, MD, is solely liable on the Plaintiffs' cause of action for any negligent acts or omissions described in the Amended Complaint.

7.    Original Defendants assert that if Plaintiffs' claims are proven, specifically for any care by Dr. Turner, all allegations being specifically denied, then Additional Defendant Clinton A. Turner, MD, is jointly or severally liable with the Original Defendants on the Plaintiffs' cause of action for any negligent acts or omissions described in the Amended Complaint.

**WHEREFORE,** Original Defendants Temple University Hospital, Inc. a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., Temple University Hospital Department of Obstetrics, Gynecology, Samantha Jagannathan, M.D., Sarah Martin, M.D. and Micaela Fernandes, R.N. allege that Additional Defendant Clinton A. Turner is alone liable to

3

Plaintiffs, jointly and/or severally liable to Plaintiffs, or is liable over to Original Defendants for contribution and/or indemnification, together with the appropriate costs and fees.

<div align="center">

**COUNT I: NEGLIGENCE**
**ORIGINAL DEFENDANTS V. CLINTON A TURNER, M.D.**

</div>

8.       Original Defendants incorporate the preceding paragraphs as though set forth at length herein.

9.       Original Defendants also incorporate by reference the factual averments of Plaintiffs' Amended Complaint, with all allegations being specifically denied.

10.       Original Defendants deny liability for the injuries alleged in Plaintiffs' Amended Complaint, the allegations of which are incorporated herein by reference. See Exhibit "A."

11.       At all times relevant hereto Dr. Turner was not employed by Original Defendants, nor was he acting within the scope or course of their agency and employment while treating Ms. Lopez DaSilva and her unborn child.

12.       According to Plaintiffs' Amended Complaint, Plaintiff's providers, including Dr. Turner negligently treated Ms. Lopez DaSilva and her unborn child as follows:

a.  Failure to emergently perform a C-section in the face of fetal distress and instead inexplicably delaying delivery, thereby placing Baby in imminent danger;

b.  Failure to take prompt and appropriate action upon the appearance of the signs and symptoms or fetal distress;

c.  Failure to take prompt and appropriate action upon the appearance of the signs and symptoms or fetal bradycardia;

d.  Failure to properly interpret and adequately respond to the non-reassuring fetal heart tracings;

e.   Failure to conduct appropriate and adequate fetal monitoring;

f.   Failure to appropriately and adequately interpret fetal heart tracings;

g.   Failure to consider the cause of Baby's fetal heart tracings;

h.   Failure to adequately and properly generate and retain the appropriate medical records, including the fetal monitoring strips;

i.   Disregarding the rules, policies, protocols, standards and procedures regarding fetal distress;

j.   Improperly delaying the delivery of Baby on December 113, 2019 when there was evidence of fetal distress;

k.   Failure to perform a timely C-section delivery in the face of the signs and symptoms of fetal distress;

l.   Failure to properly and adequately assess the condition of Baby;

m.   Failure to properly and adequately record and document the condition of Baby;

n.   Failure to diagnose the anoxic brain injury suffered by Baby during the labor and delivery process;

o.   Failure to treat the anoxic injuries sustained by Baby during the labor and delivery process;

p.   Failure to adequately assess Baby for injury to the brain;

q.   Disregarding the rules, policies, protocols, standards, and procedures regarding fetal monitoring;

r.   Disregarding the rules, policies, protocols, standards and procedures regarding fetal distress;

1220898.v1

Case ID: 191201095

s. Such other acts or omissions of negligence and/or carelessness which may become apparent during discovery or the trial of this case;

See Exhibit "A".

13. According to Plaintiffs' Complaint, as direct and proximate cause of the alleged negligence of Defendants, including Dr. Turner, Plaintiffs suffered severe and permanent injuries. See Exhibit "A".

14. Original Defendants deny any and all liability, but if upon adjudication of the within cause of action, it is determined that negligence, carelessness, and/or lack of due care occurred, and did in some way cause Plaintiffs to experience injuries, Original Defendants aver that Additional Defendant is solely liable to Plaintiffs, or is jointly and/or severally liable with Original Defendants.

15. In the event Plaintiffs receive a judgment against Original Defendants on the within cause of action, then Additional Defendant is liable for said negligence, carelessness and/or lack of due care and is liable over to the Original Defendants by way of indemnity and/or contribution as the Court may find, for all or part of such sum as may be found against Original Defendants, by reason of said negligence, carelessness, and/or lack of due care of Additional Defendant.

**WHEREFORE**, Original Defendants Temple University Hospital, Inc. a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., Temple University Hospital Department of Obstetrics, Gynecology, Samantha Jagannathan, M.D., Sarah Martin, M.D. and Micaela Fernandes, R.N. allege that Additional Defendant Clinton A. Turner, MD is alone liable to Plaintiffs, jointly and/or severally liable to Plaintiffs, or is liable over to Original Defendants for contribution and/or indemnification, together with appropriate costs and fees.

1220898.v1

Respectfully submitted,

**BURNS WHITE**

BY:_____

JAMES A. YOUNG, ESQUIRE
RICHARD S. MARGULIES, ESQUIRE
ADRIANNA YANEZ, ESQUIRE
Attorneys for Defendants
Temple University Hospital, Inc. a/k/a d/b/a
Temple University Hospital, Temple
University Health System, Inc., Temple
University Hospital Department of
Obstetrics, Gynecology, Samantha
Jagannathan, M.D., Sarah Martin, M.D.
and Micaela Fernandes, R.N.

Date:  January 17, 2020

1220898.v1

Case ID: 191201095

## VERIFICATION

Charles B. Conklin verifies that he is Associate Vice President of Risk Management for Temple University Hospital, Inc., and as such, is authorized to take this Verification on behalf of Defendant Temple University Hospital, Inc. in this action, that the factual averments contained in the foregoing Joinder Complaint against Additional Defendant Clinton A. Turner are true and correct to the best of my knowledge information and belief.

This Verification is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Date: _1/16/20_

_Charles B. Conklin_
CHARLES B. CONKLIN
Associate Vice President of Risk Management
Temple University Hospital, Inc.

1220898.v1

Case ID: 191201095

## CERTIFICATE OF SERVICE

I, Adrianna Yanez, Esquire, do hereby certify that on this day I caused a true copy of the

foregoing Joinder Complaint Directed to Additional Defendant, Clinton A. Turner, M.D. to be

served as follows:

**BY PROCESS SERVER**
Clinton A. Turner, M.D.
Delaware Valley Community Health
401 W Allegheny Ave
Philadelphia PA 19133
Phone: 215-291-2500

**BY THE COURT'S ELECTRONIC FILING**
Joseph L. Messa, Esq.
Megan M. Kwak, Esq.
MESSA & ASSOCIATES, PC
123 South 22nd Street
Philadelphia, PA 19103

_____
ADRIANNA YANEZ, ESQUIRE

DATE:  January 17, 2020

1220898.v1

Filed and Attested by the
Office of Judicial Records
17 JAN 2020 11:39 am
E. HAURIN

# Exhibit A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
| --- |
| **DECEMBER 2019** |
| E-Filing Number: 1912017287 |
| **001095** |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| ANDREZA L. DASILVA | TEMPLE UNIVERSITY HOSPITAL, INC., ALIAS: TEMPLE UNIVERSITY HOSPITAL |
| **PLAINTIFF'S ADDRESS** 3305 OAKMONT STREET PHILADELPHIA PA 19136 | **DEFENDANT'S ADDRESS** 3401 NORTH BROAD STREET PHILADELPHIA PA 19140 |
| **PLAINTIFF'S NAME** JOSE DASILVA | **DEFENDANT'S NAME** TEMPLE UNIVERSITY HEALTH SYSTEM, INC. |
| **PLAINTIFF'S ADDRESS** 3305 OAKMONT STREET PHILADELPHIA PA 19136 | **DEFENDANT'S ADDRESS** 3401 NORTH BROAD STREET PHILADELPHIA PA 19140 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** TEMPLE UNIVERSITY HOSP. DEPARTMENT OF OBSTETRICS, GYNECOLOGY |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** 3401 NORTH BROAD STREET PHILADELPHIA PA 19140 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
| --- | --- | --- |
| 2 | 6 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal  [ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
| --- | --- | --- | --- |
| [ ] $50,000.00 or less [X] More than $50,000.00 | [ ] Arbitration [X] Jury [ ] Non-Jury [ ] Other: | [ ] Mass Tort [ ] Savings Action [ ] Petition | [ ] Commerce [ ] Minor Court Appeal [ ] Statutory Appeals | [ ] Settlement [ ] Minors [ ] W/D/Survival |

**CASE TYPE AND CODE**
2M – MALPRACTICE – MEDICAL

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** DEC 06 2019 A. SILIGRINI | IS CASE SUBJECT TO COORDINATION ORDER?  YES    NO |
| --- | --- | --- |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ANDREZA L DASILVA , JOSE DASILVA

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY JOSEPH L. MESSA JR | ADDRESS MESSA & ASSOCIATES PC 123 SOUTH 22ND STREET PHILADELPHIA PA 19103 |
| --- | --- |
| **PHONE NUMBER** (215)568-3500 | **FAX NUMBER** (215)568-3501 | |
| **SUPREME COURT IDENTIFICATION NO.** 53645 | **E-MAIL ADDRESS** JMessa@Messalaw.com |
| **SIGNATURE OF FILING ATTORNEY OR PARTY** JOSEPH MESSA JR | **DATE SUBMITTED** Friday, December 06, 2019, 12:23 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

(5)

**COMPLETE LIST OF DEFENDANTS:**



1. TEMPLE UNIVERSITY HOSPITAL, INC. — *accepted te 12/17/19*
   ALIAS: TEMPLE UNIVERSITY HOSPITAL
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
2. TEMPLE UNIVERSITY HEALTH SYSTEM, INC. — *accepted te 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
3. TEMPLE UNIVERSITY HOSP. DEPARTMENT OF OBSTETRICS, GYNECOLOGY — *accepted te 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
4. SAMANTHA JAGANNATHAN, M.D. — *accepted te 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
5. SARAH MARTIN, M.D. — *refused te 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140
6. MICAELA FERNANDEZ, R.N. — *accepted te 12/17/19*
   3401 NORTH BROAD STREET
   PHILADELPHIA PA 19140

Case ID: 191201095

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
  Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22ⁿᵈ Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

Attorneys for Plaintiff ~~and~~ Attested by the
  Office of Judicial Records
THIS IS NOT AN ARBITRATION :53 pm
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.

| | |
|---|---|
| JOSHUA DA SILVA, by and through his parents and legal guardians, ANDREZA LOPEZ DASILVA and JOSE DASILVA, | PHILADELPHIA COUNTY COURT OF COMMON PLEAS |
| Plaintiffs | |
| vs. | DECEMBER TERM, 2019 |
| TEMPLE UNIVERSITY HOSPITAL, INC., a/k/a d/b/a TEMPLE UNIVERSITY HOSPITAL; TEMPLE UNIVERSITY HEALTH SYSTEM, INC.; TEMPLE UNIVERSITY HOSPITAL DEPARTMENT OF OBSTETRICS, GYNECOLOGY; SAMANTHA JAGANNATHAN, M.D.; SARAH MARTIN, M.D.; AND MICAELA FERNANDES, R.N., | No. _____ |
| Defendants. | |

## CIVIL ACTION COMPLAINT
### 2M – PROFESSIONAL MEDICAL MALPRACTICE
### NOTICE TO DEFEND

| "NOTICE" | "AVISO" |
|---|---|
| "You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | "Le han demando a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación.  Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| "YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP." | "LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL." |
| Philadelphia Bar Association Lawyer Referral and Information Service One Reading Center Philadelphia, PA 19107 (215) 238-6333 TTY (215) 451-6197 | Asociacion de Licenciados de Filadelfia Servicio de Referencia e Informacion Legal One Reading Center Philadelphia, PA 19107 (215) 238-6333 TTY (215) 451-6197 |

1

**MESSA & ASSOCIATES, P.C.**
By: Joseph L. Messa, Jr., Esquire
    Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

**Attorneys for Plaintiff**

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

---

**JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA**

                            **Plaintiffs,**

**vs.**

**TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**TEMPLE UNIVERSITY HEALTH
SYSTEM, INC.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**SAMANTHA JAGANNATHAN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**PHILADELPHIA COUNTY
COURT OF COMMON PLEAS**

**DECEMBER TERM, 2019**

**No. _____**

I

Case ID: 191201095
Case ID: 191201095

```
SARAH MARTIN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

MICAELA FERNANDES, R.N.
3401 N. Broad St.
Philadelphia, PA 19140

              Defendants.
```

## PLAINTIFFS' COMPLAINT
## 2M – PROFESSIONAL MEDICAL MALPRACTICE

Plaintiffs, Andreza Lopez DaSilva and Jose DaSilva, individually and on behalf of their son Joshua DaSilva, a minor, by and through their attorneys, Messa & Associates, P.C., bring the following Amended Complaint, and in support thereof aver as follows:

### INTRODUCTION

1.     On December 13, 2017, Plaintiffs were anxiously anticipating the birth of their fourth child, when they presented to Temple University Hospital for a scheduled C-section.

2.     Mrs. Lopez DaSilva came under the care of Dr. Turner, Dr. Saperstein, and Nurse Fernandes.

3.     When Plaintiffs presented to Labor and Delivery, there was evidence of a live, well-oxygenated fetus.

4.     At approximately 3:30 p.m., during the placement of an IV by Nurse Fernandes, there was evidence of a prolonged 4-mintue deceleration of Baby Joshua's heart rate to as low as 60 bpm.

5.     Subsequently, Baby Joshua's heart rate recovered, and the electronic fetal monitor documented a Category I fetal heart tracing up until 5:43 p.m.

2

6.     Sometime just before 5:48 p.m., Mrs. Lopez DaSilva was taken to the operating room for a repeat C-section.

7.     At approximately 6:03 p.m., shortly after the administration of spinal anesthesia in the operating room, Defendants documented that Baby Joshua's heart rate dropped to a dangerously low bradycardic level of 60 beats per minute ("bpm").

8.     By 6:05 p.m., Defendants could not detect Baby Joshua's heart rate at all.

9.     Despite the evidence of fetal distress, and even though Mrs. Lopez DaSilva had been in the hospital for more than three (3) hours and there had been a prior bradycardic episode at approximately 3:30 p.m. that should have put Defendants on notice of a potential issue, and notwithstanding the fact Mrs. Lopez DaSilva was already in the operating room and anesthetized for her scheduled C-section, Defendants inexplicably delayed delivery for more than ten minutes and failed to take emergent action to get Baby Joshua out.

10.    Finally, at 6:17 p.m., Baby Joshua was delivered.

11.    But it was too late.

12.    At delivery, Baby Joshua's lifeless body was flaccid and blue.

13.    His initial heart rate was bradycardic at 64 bpm.

14.    Baby Joshua's APGAR scores were 1 at one minute, 2 at five minutes, 2 at ten minutes, 2 at fifteen minutes, and 2 at twenty minutes.

15.    He was emergently transferred to the NICU, where he underwent resuscitation and intubation before being transferred to St. Christopher's Hospital for Children for further evaluation and treatment.

16.    Baby Joshua's injuries were the direct consequence of Defendants' failure to act promptly and emergently deliver Baby Joshua via C-section in the face of evident fetal distress.

3

17.   Defendants' unfathomable decision to delay delivery for nearly 15 minutes needlessly deprived Baby Joshua's brain of oxygen.

18.   Defendants' dangerous decision to delay delivery led to Baby Joshua's severe and permanent injuries.

19.   Through this action, Plaintiffs Andreza Lopez DaSilva and Jose DaSilva seek compensatory and punitive damages on behalf of their minor son, Joshua DaSilva, who sustained severe, permanent, and profoundly disabling injuries at birth due to Defendants' failure to promptly deliver him in the face of evident fetal distress.

## PARTIES

20.   Plaintiffs **Andreza Lopez DaSilva and Jose DaSilva** are the parents and natural guardians of Joshua DaSilva, a minor, and reside at 3305 Oakmont Street, Philadelphia, PA 19136.

21.   Defendant, **Temple University Hospital, Inc. a/k/a d/b/a Temple University Hospital ("TUH")**, is a Pennsylvania corporation, partnership, and/or other entity which provides training and instruction to medical students, interns, residents and fellows at Temple University Hospital operating and existing in accordance with the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

22.   At all relevant and material times, TUH acted by and through its directors, officers, shareholders, employees, physicians, nurses, staff members and/or its agents who were acting within the course and scope of their agency and/or within the right of its control, including the other named defendants herein and the physicians, residents, nurses and other staff responsible for the care and treatment of Joshua DaSilva on December 13, 2017.

4

23.     At all relevant and material times, TUH was and is vicariously liable and/or ostensibly liable for the acts and/or omissions of its directors, officers, employees, physicians, nurses, staff members and/or its agents who were acting within the course and scope of its agency and/or within its right of control including, but not limited to Dr. Jagannathan, Dr. Martin, and Nurse Fernandes.

24.     Plaintiffs are asserting professional liability and corporate negligence claims against TUH.

25.     Defendant, **Temple University Health System, Inc.,** is a Pennsylvania corporation, partnership, and/or other entity which provides training and instruction to medical students, interns, residents and fellows at Temple University Hospital operating and existing in accordance with the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

26.     At all relevant and material times, Temple University Health System, Inc., acted by and through its directors, officers, shareholders, employees, physicians, nurses, staff members and/or its agents who were acting within the course and scope of their agency and/or within the right of its control, including the other named defendants herein and the physicians, residents, nurses and other staff responsible for the care and treatment of Joshua DaSilva on December 13, 2017.

27.     At all relevant and material times, Temple University Health System, Inc. was and is vicariously liable and/or ostensibly liable for the acts and/or omissions of its directors, officers, employees, physicians, nurses, staff members and/or its agents who were acting within the course and scope of its agency and/or within its right of control including, but not limited to Dr. Jagannathan, Dr. Martin, and Nurse Fernandes.

Case ID: 191201095
Case ID: 191201095

28.     Plaintiffs are asserting professional liability and corporate negligence claims against Temple University Health System, Inc.

29.     Defendant, **Temple University Hospital Department of Obstetrics & Gynecology**, is and was at all times relevant and material hereto, a Pennsylvania corporation, partnership, and/or other entity, organized and existing under the laws of the Commonwealth of Pennsylvania, engaged in the provision of medical and health care services with a principal place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

30.     At all times relevant and material hereto Defendant, Temple University Hospital Department of Obstetrics & Gynecology, acted individually and/or by and through its agents, ostensible agents, staff, employees, residents, physicians, fellows, medical students, including Dr. Jagannathan, Dr. Martin, and Nurse Fernandes, and/or contractors who were acting with actual or implied authority to act within the course and scope of their employment and/or agency or ostensible agency relationship and the scope of their authority in the furtherance of the business and practice of Temple University Hospital Department of Obstetrics & Gynecology.

31.     Plaintiffs are asserting a professional liability claim against Temple University Hospital Department of Obstetrics & Gynecology.

32.     Defendant, **Samantha Jagannathan, M.D. ("Dr. Jagannathan")** is a physician who was licensed to practice medicine in the Commonwealth of Pennsylvania, having a regular place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

33.     At all times relevant and material hereto, Dr. Jagannathan held herself out as a specialist in the field of Obstetrics and Gynecology and was engaged in the practice of his profession at TUH. At all times material hereto, Dr. Jagannathan was the agent, servant, employee

6

Case ID: 191201095
Case ID: 191201095

and/or ostensible agent of TUH, Temple University Health System, Inc., and/or Temple University Hospital Department of Obstetrics & Gynecology.

34.     Plaintiffs are asserting a professional liability claim against Dr. Jagannathan.

35.     Defendant, **Sarah Martin, M.D. ("Dr. Martin")** is a physician who was licensed to practice medicine in the Commonwealth of Pennsylvania, having a regular place of business located at 3401 N. Broad Street, Philadelphia, PA 19140.

36.     At all times relevant and material hereto, Dr. Martin held herself out as a specialist in the field of Obstetrics and Gynecology and was engaged in the practice of his profession at TUH. At all times material hereto, Dr. Martin was the agent, servant, employee and/or ostensible agent of TUH, Temple University Health System, Inc., and/or Temple University Hospital Department of Obstetrics & Gynecology.

37.     Plaintiffs are asserting a professional liability claim against Dr. Martin.

38.     Defendant, **Micaela Fernandes, R.N.**, at all times relevant and material hereto, was a member of the Nursing staff of Defendant TUH who provided nursing care to Andreza Lopez DaSilva and Joshua DaSilva at Defendant TUH.

39.     At all times relevant and material hereto, Defendant, Nurse Fernandes was an agent, employee, servant, workman, staff member, resident and/or ostensible agent of Defendant TUH, Temple University Health System, Inc., and/or Temple University Hospital Department of Obstetrics & Gynecology.

40.     At all relevant and material times hereto, Andreza Lopez DaSilva and Joshua DaSilva were patients of Defendants.

41.     An appropriate licensed professional has concluded that the care, skill, or knowledge exhibited by the Defendants, jointly and/or severally, deviated from or fell outside

7

professional standard and that such conduct was a substantial factor or increased the risk of harm

to Plaintiffs. Certificates of Merit against the Defendants are attached collectively hereto as

**Exhibit A.**

## FACTUAL ALLEGATIONS

42.     Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set

forth at length herein.

43.     On December 13, 2017, at approximately 3:00 p.m., Plaintiffs presented to TUH

for a scheduled C-section of their fourth child, Joshua DaSilva.

44.     At the time of her presentation, Mrs. Lopez DaSilva came under the care of Dr.

Turner, the attending physician, Dr. Saperstein, a resident, and Nurse Fernandes.

45.     During the placement of an IV at approximately 3:30 p.m. by Nurse Fernandes,

there was evidence of a prolonged 4-mintue deceleration of Baby Joshua's heart rate to as low as

60 bpm.

46.     At approximately 4:00 p.m., Dr. Saperstein documented the incident as follows:

**History of Present Illness**
25 y.o. G4P3003@ 39w0d by 9w5d us admitted for repeat c-section. Patient reports
good fetal movement. Denies vaginal bleeding, loss of fluid or contractions. Denies
HA, visual changes or RUQ pain.

While being admitted and having IV drawn, patient had 4-minute fetal heart
deceleration to the 60s, with spontaneous return to baseline with after repositioning.
Patient at the time was lying down and started to feel warm but not lightheaded or
dizzy.

47.     Nurse Fernandes  documented the incident in her nursing note, stating:

Attempted to place peripheral IV while patient lying on back with HOB at 30
degrees, placed spotlight on patient for better visualization, patient became
tachycardic and diaphoretic. Loss of signal with FHR tracing and then prolonged
FHR deceleration to 60. Patient's blood pressure within normal limits. Cousin at the
bedside translating. Patient denied feeling dizzy and denied feeling like she was
going to pass out. Patient rolled to right side and then left side, oxygen mask 10

8

liters placed. FHR returned to baseline. Dr. Saperstein at bedside. Dr. Turner made aware of event. Will start an IV NS fluid bolus. Will continue to monitor.

48.     Dr. Turner further documented in his Attending Attestation note at 5:56 p.m. the following:

> I saw and examined the patient and agree with the resident's note. 25 y.o. G4P3003 @ 39w0d by 9w5d us [sic] admitted for repeat c-section, BTL. OB history pertinent for SVD x 1 and C/S x 2. Patient reports good fetal movement. Denies vaginal bleeding, loss of fluid or contractions. Uncomplicated AP course. +vagal episode during IV placement. With associated fetal decel. That ressolved [sic] with position change, IV hydration, and 02. Now with FHT's 150's/ cat. 1 tracing.

49.     Subsequently, the electronic fetal monitor documented a Category I fetal heart tracing up until approximately 5:43 p.m.

50.     Sometime just before 5:48 p.m., Defendants transported Mrs. Lopez DaSilva to the operating room for a repeat C-section.

51.     Dr. Turner performed the C-section.

52.     Dr. Jagannathan assisted Dr. Turner.

53.     Nurse Fernandes was also present in the operating room at the time of the C-section.

54.     At 5:58 p.m., Drs. Koers and Ligouri performed the insertion of spinal anesthesia without complication.

55.     Prior to the administration of spinal anesthesia, Dr. Turner documented fetal heart tracings in the 130s.

56.     Following the administration of the spinal anesthesia, Dr. Turner again documented fetal heart tracings in the 130s.

57.     At 6:03 p.m., the anesthesia team reported "Anesthesia ready."

58.     Shortly after 6:04 p.m., however, Dr. Turner noted that there was a spontaneous deceleration in which the fetal heart rate fell to a bradycardic level of as low as 60 bpm with a

9

small increase to the 80 bpm before subsequently becoming undetectable.

59.    Defendants then inexplicably attempted to search for the fetal heart rate using an ultrasound wand despite the prior bradycardic event, the fact the C-section was already planned, and the patient was anesthetized and ready for surgery.

60.    In her note, Dr. Jagannathan documented the following:

> Drs. Turner and I discussed events surrounding STAT c-section and newborn status. We explained that after epidural placement, FHT were noted to be low and in the 80s. While preparing for STAT c-section, a US was placed and FHT were still unable to be confirmed.

61.    Moreover, Nurse Fernandes noted that following the fetal heart rate deceleration to 60 bpm, there was difficulty in obtaining the fetal heart rate.

62.    Nurse Fernandes further stated that the ultrasound was deferred, and Dr. Turner proceeded with an emergent C-section.

63.    At 6:11 p.m., Dr. Turner requested via text message that Dr. Martin, a resident, report to the operating room to assist with the procedure due to the fetal bradycardia.

64.    Dr. Turner further documented at 6:11 p.m. that he completed prepping and draping the patient.

65.    At 6:12 p.m., Dr. Martin was reported to be in the operating room along with Nurse Jackson.

66.    At 6:14 p.m., nearly ten minutes after the documented evidence of an abrupt deceleration to 60 bpm followed by a loss of the fetal heart rate, Dr. Turner made the first incision.

67.    Baby Joshua was delivered at 6:17 p.m.

68.    Baby Joshua was without oxygen for at least 13 minutes prior to his delivery.

69.    At the time of delivery, Baby Joshua was limp, blue, and apneic.

70.    Baby Joshua had an initial heart rate of less than 100 bpm.

Case ID: 191201095
Case ID: 191201095

71.    Baby Joshua required resuscitation and intubation.

72.    Baby Joshua's APGAR scores were 1 at one minute, 2 at five minutes, 2 at ten minutes, and 2 at fifteen minutes.

73.    Blood gasses drawn at the time of delivery revealed severe metabolic acidosis.

74.    Baby Joshua was intubated and transferred to the NICU.

75.    At 10:05 p.m., Baby Joshua was transferred to St. Christopher's Hospital with an admitting diagnosis of severe hypoxic ischemic encephalopathy (HIE), respiratory failure, persistent pulmonary hypotension of the newborn (PPHN), left ventricular dysfunction, pulmonary hemorrhage, metabolic acidosis, presumed sepsis, hemodynamic instability, and hyperglycemia.

76.    On January 12, 2018, Baby Joshua underwent genetic testing; the results of which came back as normal.

77.    On February 2, 2018, Baby Joshua was discharged home.

78.    At the time of his discharge, Baby Joshua's diagnosis was HIE, pulmonary hypertension, chronic lung disease, and horseshoe kidney.

79.    The injuries that Baby Joshua sustained on December 13, 2017, were caused by the negligence and carelessness of the Defendants herein jointly and severally, and not by any act or omission on the part of Plaintiffs.

80.    As a direct and proximate result of the prolonged oxygen deprivation suffered by Baby Joshua, which was caused by the negligence and carelessness of the Defendants herein, Baby Joshua was diagnosed with HIE, pulmonary hypertension, and chronic lung disease.

81.    As a direct and proximate result of the injuries caused by the negligence and carelessness of the Defendants, Baby Joshua is severely, permanently, and profoundly disabled.

82.    As a direct result of the injuries caused by the negligence and carelessness of the

11

Defendants, Baby Joshua has in the past and will continue to in the future to suffer physical, mental, psychological, and emotional pain, suffering, disfigurement, inconvenience, and embarrassment, and the loss of life's pleasures.

83.     As a direct and proximate result of the injuries caused by the negligence and carelessness of the Defendants, Plaintiffs have been forced to expend and will continue to into the future to expend large sums of money for medical care, surgical care, custodial care, medications, and therapies.

84.     As a direct and proximate result of the injuries caused by the negligence and carelessness of the Defendants, Baby Joshua has suffered a permanent and total impairment of his earnings and earning capacity, to his great financial detriment and loss, which continue permanently into the future.

## THE CAUSES OF ACTION AND CLAIMS

### COUNT I – NEGLIGENCE
### PLAINTIFFS v. SAMANTHA JAGANNATHAN, M.D., AND SARAH MARTIN, M.D.

85.     Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

86.     Defendants were physicians at TUH who undertook to diagnose, treat and otherwise care for Plaintiff Andreza Lopez DaSilva and Baby Joshua in Labor & Delivery on or about December 13, 2017, in the course of their duties at TUH.

87.     Defendants undertook the aforesaid care of Plaintiffs Andreza Lopez DaSilva and Baby Joshua with the knowledge and intention that Plaintiffs would rely on their opinions, training and experience in regard to medical care rendered to Plaintiffs during the course and care of their treatment in the Labor & Delivery Department at TUH on December 13, 2017.

88.     Defendants undertook the aforesaid care of Plaintiffs for compensation rendered by

12

Case ID: 191201095
Case ID: 191201095

Plaintiffs or on their behalf.

89.     Defendant Dr. Jagannathan held herself out to Plaintiffs and the public as an expert in obstetrics and gynecological medicine.

90.     Defendant Dr. Martin herself out to Plaintiffs and the public as an expert in obstetrics and gynecological medicine.

91.     Defendants owed a duty of care to Plaintiffs and Baby Joshua, which was breached to their great detriment.

92.     Defendants had a duty to provide medical care and treatment in a safe manner and in accordance with good and acceptable medical standards.

93.     Defendants breached their duty of care to Plaintiffs and Baby Joshua by numerous acts and/or omissions, including but not limited to:

   a.   Failure to emergently perform a C-section in the face of fetal distress and instead inexplicably delaying delivery, thereby placing Baby Joshua in imminent danger;

   b.   Failure to take prompt and appropriate action upon the appearance of the signs and symptoms of fetal distress;

   c.   Failure to take prompt and appropriate action upon the appearance of the signs and symptoms of fetal bradycardia;

   d.   Failure to properly interpret and adequately respond to the non-reassuring fetal heart tracings;

   e.   Failure to conduct appropriate and adequate fetal monitoring;

   f.   Failure to appropriately and adequately interpret fetal heart tracings;

   g.   Failure to consider the cause of Baby Joshua's fetal distress;

   h.   Failure to adequately and properly generate and retain the appropriate medical records, including the fetal monitoring strips;

13

i.  Disregarding the rules, policies, protocols, standards, and procedures regarding fetal distress;

j.  Improperly delaying the delivery of Baby Joshua on December 13, 2017, when there was evidence of fetal distress;

k.  Failure to perform a timely C-section delivery in the face of the signs and symptoms of fetal distress;

l.  Failing to properly and adequately assess the condition of Baby Joshua;

m.  Failure to properly and adequately record and document the condition of Baby Joshua;

n.  Failure to diagnose the anoxic brain injury suffered by Baby Joshua during the labor and delivery process;

o.  Failure to treat the anoxic injuries sustained by Baby Joshua during the labor the delivery process;

p.  Failure to adequately assess Baby Joshua for injury to the brain;

q.  Disregarding the rules, policies, protocols, standards, and procedures regarding fetal monitoring;

r.  Disregarding the rules, polices, protocols, standards, and procedures regarding fetal distress; and

s.  Such other acts or omissions of negligence and/or carelessness which may become apparent during discovery or the trial of this case.

94.     As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Defendants as set forth above, Baby Joshua was caused to suffer injuries, losses, and damages, including:

a.  Severe Hypoxic Ischemic Encephalopathy (HIE);

b.  Metabolic acidosis;

14

    c.  Respiratory failure;

    d.  Persistent Newborn Pulmonary Hypertension (PPHN)

    e.  Left ventricular systolic dysfunction;

    f.  Pulmonary hemorrhage;

    g.  Neonatal adrenal hemorrhage;

    h.  Hemodynamic instability;

    i.  Hyperglycemia; and.

    j.  Other severe and permanent injuries.

    95.    The negligence and carelessness of the Defendants, as described above, increased the risk of harm and was a proximate cause of the injuries and damages suffered by the minor Plaintiff, Joshua DaSilva.

    96.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, sustained severe and permanent injuries, the full extent of which injuries are not yet known.

    97.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, suffered severe pain, suffering, inconvenience, psychological pain, and has been deprived of life's pleasures.

    98.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has incurred and will continue to incur in the future, expenses for medical treatment and care, surgeries, therapies, and custodial care, for an indefinite period of time.

    99.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has suffered and will continue to suffer the loss of earnings and

Case ID: 191201095
Case ID: 191201095

earning capacity as a result of his disability for life.

WHEREFORE, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest, costs, attorneys' fees, and any other relief this Court deems just and proper.

## COUNT II – NEGLIGENCE
## PLAINTIFFS v. MICAELA FERNANDES, R.N.

100.   Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

101.   Defendant, Miacela Fernandes R.N., undertook to provide nursing care to the Plaintiffs, Andreza Lopez DaSilva and Baby Joshua, by and through her association with and/or employment by Defendant TUH.

102.   Neither Plaintiff, Andreza Lopez DaSilva, nor Plaintiff Baby Joshua chose or requested the care of Nurse Fernandes, but rather looked to the Defendant TUH, and accepted the medical care and services provided by and at the Defendant TUH's agents, servants, employees and/or ostensible agents, including Nurse Fernandes.

103.   Plaintiffs relied upon the medical knowledge, treatment, and advice of the Defendant Nurse Fernandes.

104.   Defendant Nurse Fernandes undertook the care of the Plaintiffs for compensation rendered by the Plaintiffs or on their behalf.

105.   Defendant Nurse Fernandes held herself out to the Plaintiffs and the public as experts in labor and delivery nursing care.

106.   Defendants Nurse Fernandes owed a duty of care to the Plaintiffs, which was breached, causing severe and permanent injury to the minor Plaintiff, Joshua DaSilva.

Case ID: 191201095
Case ID: 191201095

107.    The injuries to the minor Plaintiff, Joshua DaSilva, were the direct result of the negligence and carelessness of the Defendant Nurse Fernandes including, but not limited to the following:

    a.  Failure to conduct appropriate and adequate fetal monitoring;

    b.  Failure to appropriately and adequately interpret the fetal monitoring results;

    c.  Failure to adequately respond to data recorded on the fetal monitor and tracings;

    d.  Failure to take appropriate actions upon the appearance of the signs and symptoms of fetal distress;

    e.  Failure to properly and adequately document the conditions of Plaintiff, Andreza Lopez DaSilva, and the minor Plaintiff, Joshua DaSilva and the medical and surgical treatments rendered, as required by the accepted rules, regulations, standards, guidelines, protocols, and procedures;

    f.  Disregarding the rules, protocols, standards, and procedures regarding fetal monitoring;

    g.  Disregarding the rules, policies, protocols, standards, and procedures regarding medical documentation;

    h.  Disregarding the rules, policies, protocols, standards, and procedures regarding fetal distress;

    i.  Improperly positioning Plaintiff Andreza Lopez DaSilva during the IV placement;

    j.  Improperly administering 800 ml IV bolus of glucose where there is no physician's order for the glucose;

    k.  Failure to take prompt and adequate action to ensure Plaintiffs were adequately treated and cared for by Defendant TUH physicians and Defendant TUH;

    l.  Such other acts or omissions of negligence, carelessness and/or recklessness as may become apparent during the course of discovery or at the trial of this cause.

108.    As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Defendants as set forth above, Baby Joshua was caused to suffer injuries, losses, and damages, including:

Case ID: 191201095
Case ID: 191201095

a.   Severe Hypoxic Ischemic Encephalopathy (HIE);

b.   Metabolic acidosis;

c.   Respiratory failure;

d.   Persistent Newborn Pulmonary Hypertension (PPHN)

e.   Left ventricular systolic dysfunction;

f.   Pulmonary hemorrhage;

g.   Neonatal adrenal hemorrhage;

h.   Hemodynamic instability;

i.   Hyperglycemia; and

j.   Other severe and permanent injuries.

109.   The negligence and carelessness of the Defendants, as described above, increased the risk of harm and was a proximate cause of the injuries and damages suffered by the minor Plaintiff, Joshua DaSilva.

110.   As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, sustained severe and permanent injuries, the full extent of which injuries are not yet known.

111.   As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, suffered severe pain, suffering, inconvenience, psychological pain, and has been deprived of life's pleasures.

112.   As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has incurred and will continue to incur in the future, expenses for medical treatment and care, surgeries, therapies, and custodial care, for an indefinite period of time.

Case ID: 191201095
Case ID: 191201095

113.   As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has suffered and will continue to suffer the loss of earnings and earning capacity as a result of his disability for life.

WHEREFORE, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest, costs, attorneys' fees, and any other relief this Court deems just and proper.

### COUNT III - VICARIOUS LIABILITY
### PLAINTIFFS v. TEMPLE UNIVESITY HOSPITAL INC. A/K/A D/B/A TEMPLE UNIVERSITY HOSPITAL, TEMPLE UNIVERSITY HEALTH SYSTEM, INC., AND TEMPLE UNIVERSITY HOSPITAL DEPARTMENT OF OBSTETRICS, GYNECOLOGY

114.   Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

115.   At all times relevant and material hereto, Defendants, Temple University Inc., a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., and Temple University Hospital Department of Obstetrics and Gynecology, acted through their agents, ostensible agents, staff, servants, employees, residents, physicians, fellows, medical students, nurse practitioners, nurses, physician assistants, technicians, and/or contractors, including Dr. Jagannathan, Dr. Martin, and Nurse Fernandes.

116.   At all times relevant and material hereto, the agents, ostensible agents, staff, servants, employees, residents, physicians, fellows, medical students, nurse practitioners, nurses, physician assistants, technicians, and/or contractors, including Dr. Jagannathan, Dr. Martin, and Nurse Fernandes, were acting in the course and scope of their employment with Defendants Temple University Inc., a/k/a d/b/a Temple University Hospital, Temple University Health

19

System, Inc., and Temple University Hospital Department of Obstetrics and Gynecology.

117.   Defendants are vicariously liable for the actions and inactions of their agents, ostensible agents, staff, servants, employees, residents, physicians, fellows, medical students, nurse practitioners, nurses, physician assistants, technicians, and/or contractors, including Dr. Jagannathan, Dr. Martin, and Nurse Fernandes.

118.   The agents and ostensible agents of Defendants are identified in the medical records for Mrs. Lopez DaSilva and Baby Joshua DaSilva's admission to TUH on December 13, 2017 through December 14, 2017.

119.   The injuries to the minor Plaintiff, Joshua DaSilva, were the direct result of the negligence and carelessness of the Defendants including, but not limited to the following:

     a.  Failure to emergently perform a C-section in the face of fetal distress and instead inexplicably delaying delivery, thereby placing Baby Joshua in imminent danger;

     b.  Failure to take prompt and appropriate action upon the appearance of the signs and symptoms of fetal distress;

     c.  Failure to take prompt and appropriate action upon the appearance of the signs and symptoms of fetal bradycardia;

     d.  Failure to properly interpret and adequately respond to the non-reassuring fetal heart tracings;

     e.  Failure to conduct appropriate and adequate fetal monitoring;

     f.  Failure to appropriately and adequately interpret fetal heart tracings;

     g.  Failure to consider the cause of Baby Joshua's fetal distress;

     h.  Failure to adequately and properly generate and retain the appropriate medical records, including the fetal monitoring strips;

<div align="center">20</div>

i.   Failure to formulate, adopt, and enforce adequate rules, policies, protocols, standards, and procedures regarding the diagnosis and treatment of fetal distress;

j.   Disregarding the rules, policies, protocols, standards, and procedures regarding fetal distress;

k.   Improperly delaying the delivery of Baby Joshua on December 13, 2017, when there was evidence of fetal distress;

l.   Failure to perform a timely C-section delivery in the face of the signs and symptoms of fetal distress;

m.  Failing to properly and adequately assess the condition of Baby Joshua;

n.   Failure to properly and adequately record and document the condition of Baby Joshua;

o.   Failure to diagnose the anoxic brain injury suffered by Baby Joshua during the labor and delivery process;

p.   Failure to treat the anoxic injuries sustained by Baby Joshua during the labor the delivery process;

q.   Failure to adequately assess Baby Joshua for injury to the brain;

r.   Disregarding the rules, policies, protocols, standards, and procedures regarding fetal monitoring;

s.   Disregarding the rules, polices, protocols, standards, and procedures regarding fetal distress; and

t.   Disregarding the rules, policies, protocols, standards, and procedures regarding medical documentation;

u.   Disregarding the rules, policies, protocols, standards, and procedures regarding fetal distress;

v.   Improperly positioning Plaintiff Andreza Lopez DaSilva during the IV placement;

w.  Improperly administering 800 ml IV bolus of glucose where there is no

21

physician's order for the glucose;

    x.  Such other acts or omissions of negligence and/or carelessness which may become apparent during discovery or the trial of this case.

    120.  As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Defendants as set forth above, Baby Joshua was caused to suffer injuries, losses, and damages, including:

    a.  Severe Hypoxic Ischemic Encephalopathy (HIE);

    b.  Metabolic acidosis;

    c.  Respiratory failure;

    d.  Persistent Newborn Pulmonary Hypertension (PPHN)

    e.  Left ventricular systolic dysfunction;

    f.  Pulmonary hemorrhage;

    g.  Neonatal adrenal hemorrhage;

    h.  Hemodynamic instability;

    i.  Hyperglycemia; and

    j.  Other severe and permanent injuries.

    121.  The negligence and carelessness of the Defendants, as described above, increased the risk of harm and was a proximate cause of the injuries and damages suffered by the minor Plaintiff, Joshua DaSilva.

    122.  As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, sustained severe and permanent injuries, the full extent of which injuries are not yet known.

    123.  As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, suffered severe pain, suffering, inconvenience, psychological

22

pain, and has been deprived of life's pleasures.

124.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has incurred and will continue to incur in the future, expenses for medical treatment and care, surgeries, therapies, and custodial care, for an indefinite period of time.

125.    As a direct and proximate result of the Defendants' negligence and carelessness, minor Plaintiff, Joshua DaSilva, has suffered and will continue to suffer the loss of earnings and earning capacity as a result of his disability for life.

WHEREFORE, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest, costs, attorneys' fees, and any other relief this Court deems just and proper.

### COUNT IV - CORPORATE NEGLIGENCE
### PLAINTIFFS v. TEMPLE UNIVESITY HOSPITAL INC. A/K/A D/B/A
### TEMPLE UNIVERSITY HOSPITAL, TEMPLE UNIVERSITY HEALTH SYSTEM,
### INC., AND TEMPLE UNIVERSITY HOSPITAL DEPARTMENT
### OF OBSTETRICS, GYNECOLOGY

126.    Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

127.    Defendants Temple University Inc., a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., and Temple University Hospital Department of Obstetrics and Gynecology undertook the care of Mrs. Lopez DaSilva and Baby Joshua DaSilva with the knowledge and intention tha Plaintiffs would rely on their opinions, training and experience, and that of agents, ostensible agents, staff, servants, employees, residents, physicians, fellows, medical students, nurse practitioners, nurses, physicians assistants, technicians and/or contractors in the medical care rendered to Plaintiffs during the course of their care and treatment.

23

128.    Defendants undertook the aforesaid care and treatment of Mrs. Lopez DaSilva and Baby Joshua DaSilva for compensation rendered by Plaintiffs or on their behalf.

129.    Defendants held themselves out to Plaintiffs and the public as a specialized university teaching hospital.

130.    Defendants owed a duty of care to Plaintiffs which was breached to their great detriment.

131.    Defendants had a duty to Plaintiffs to provide medical care and treatment in a safe manner and in accordance with good and acceptable medical standards.

132.    Defendants breached its duty of care to Plaintiffs by numerous acts and/or omissions, including but not limited to:

    a.  Failing to select and retain only competent physicians;

    b.  Failing to select and retain only competent nurses;

    c.  Failing to select and retain only competent physician's assistants;

    d.  Failing to select and retain only competent residents;

    e.  Failing to select and retain only competent fellows;

    f.  Failing to select and retain only competent technicians;

    g.  Failing to properly oversee all persons who practice medicine and nursing within the medical facility;

    h.  Failing to formulate, adopt, and enforce appropriate rules, policies, and procedures, so as to ensure quality care for patients;

    i.  Failing to properly train doctors, nurses, physician's assistants, and staff to properly care for patients;

    j.  Failing to properly train doctors, nurses, physician's assistants, and staff to use due care under the circumstances;

    k.  Failing to properly and appropriately supervise their agents, servants, employees and/or ostensible agents;

Case ID: 191201095
Case ID: 191201095

l. Failing to properly train doctors, residents, fellows, nurses, physician's assistants, and staff to regarding fetal monitoring;

m. Failing to properly doctors, residents, fellows, nurses, physician's assistants, and staff to react emergently where there is a deceleration followed by a loss of the baby's heart rate;

n. Failing to properly train doctors, residents, fellows, nurses, physician's assistants, and staff to evaluate patients with evident fetal distress;

o. Failing to properly train doctors, nurses, physician's assistants, and staff to properly monitor patients with evident fetal distress;

p. Failing to properly train doctors, nurses, physician's assistants, and staff to take proper cognizance of the signs and symptoms of problems arising from fetal distress;

q. Failing to properly train doctors, nurses, physician's assistants, and staff to communicate negative and/or poor outcomes to their patients regarding fetal distress;

r. Failing to properly train doctors, nurses, physician's assistants, and staff to properly communicate critical patient information to other members of the medical team participating in the care and treatment of patients;

s. Failing to formulate, adopt, and enforce adequate rules, procedures and policies to be followed by its physicians, fellows, residents, interns, students, physician's assistants, staff, personnel, nurses, nurse practitioners, technicians and/or independent contractors in connection with the monitoring, evaluation, diagnosis, and treatment and in general and in patients like Baby Joshua DaSilva and in particular with regard to fetal distress;

t. Failing to formulate, adopt, and enforce policies and procedures about monitoring, and evaluating obstetrical patients;

u. Failing to select and ensure that only competent and properly qualified, experienced and trained physicians, fellows, residents, interns, students, physician's assistants, staff, personnel, nurses, nurse practitioners, technicians and/or independent contractors diagnose, care for and treat patients with fetal distress;

v. Failing to oversee, supervise and monitor all aspects of the care delivered by its physicians, fellows, residents, interns, students, physician's assistants, staff, personnel, nurses, nurse practitioners, technicians and/or independent contractors;

Case ID: 191201095
Case ID: 191201095

w. Failing to oversee and review the competence, qualifications and experience of persons practicing medicine and aiding in the delivery of medical care within its practice as to patient care;

x. Failing to maintain a safe and adequate medical practice for the care, protection and treatment of patients to ensure proper and timely diagnosis and treatment of the condition of patients and to ensure the timely and appropriate treatment of patient complaints;

y. Failing to properly supervise, oversee, monitor, manage, control and review ongoing medical and nursing care and services being provided within the medical practice to avoid risks of harm and complications to its patients;

z. Failing to have proper facilities, equipment and systems for the care of its patients;

aa. Failing to employ appropriate methods of quality assurance; and

bb. Failing to protect and safeguard the health and well-being of its patients, particularly Baby Joshua DaSilva.

133. Defendants Temple University Inc., a/k/a d/b/a Temple University Hospital, Temple University Health System, Inc., and Temple University Hospital Department of Obstetrics and Gynecology knew, or should have known, that the foregoing deviations and insufficiencies in their policies and procedures could cause injuries, damages and/or harm to Plaintiffs and/or increased the risk of Plaintiffs from suffering the injuries, damages, and harms more fully set forth herein and incorporated by reference.

134. Defendants foregoing deviations from accepted standards of care were factual causes of the injuries, damages and/or harm of Plaintiffs and/or increased the risks of Plaintiffs suffering the injuries, damages and/or harms more fully set forth herein and incorporated by reference.

WHEREFORE, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest,

Case ID: 191201095
Case ID: 191201095

costs, attorneys' fees, and any other relief this Court deems just and proper.

**COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**PLAINTIFFS v. ALL DEFENDANTS**

135.   Plaintiffs hereby incorporate all paragraphs of this Complaint as through fully set forth at length herein.

136.   As a direct and proximate result of the negligence and carelessness of the Defendants, as more fully set forth hereinabove, Plaintiffs Andreza Lopez DaSilva and Jose DaSilva, were caused to see and experience first-hand the injury to their unborn child before, during, and after the labor and delivery.

137.   As a direct and proximate result of the negligence, carelessness and/or recklessness of the Defendants, as more fully set forth hereinabove, Plaintiffs Andreza Lopez DaSilva and Jose DaSilva, being in the zone of danger and present, and experiencing the negligence and carelessness first-hand and observing the injuries to the minor Plaintiff, as they happened, suffered a severe and permanent emotional injury, distress, shock to their nervous system and psychiatric and psychological disorder, resulting in severe depression, anxiety, and post-traumatic stress disorder, which with psychological and psychiatric injuries they have suffered and will continue to suffer for an indefinite period of time into the future, to their great detriment and loss.

138.   As a direct and proximate result of the negligence and carelessness of the Defendants, as more fully set forth hereinabove, Plaintiffs Andreza Lopez DaSilva and Jose DaSilva have been and will be required in the future, to expend money for medicine and medical attention, in an attempt to treat her severe emotional distress suffered as a result of the Defendants' acts.

**WHEREFORE**, Plaintiffs, individually and on behalf of their son, Joshua DaSilva, a minor, demand judgment against the Defendants, and each of them, jointly and severally, and in

27

an amount in excess of $50,000.00 in compensatory and punitive damages, together with interest,

costs, attorneys' fees, and any other relief this Court deems just and proper.

<div align="center" style="margin-left:40%">

Respectfully submitted,

**MESSA & ASSOCIATES, P.C.**

</div>

By:    /s/ Joseph L. Messa, Jr.
            Joseph L. Messa, Jr.
            Megan M. Kwak
            *Attorneys for Plaintiffs*

Date:  December  4 , 2019

## VERIFICATION

I, _____Andreza DaSilva_____, Plaintiff herein, make this Verification and state that the

statements made in the foregoing are true and correct to the best of my knowledge, information,

and belief.

I, the undersigned, understand that the statements therein are made subject to the

penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

_____
                                                                                Signature

Dated: __12/04/19__

## VERIFICATION

Jose DaSilva

I, _____, Plaintiff herein, make this Verification and state that the

statements made in the foregoing are true and correct to the best of my knowledge, information,

and belief.

I, the undersigned, understand that the statements therein are made subject to the

penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

_____
                                                        Signature

Dated:   12/04/19

# Exhibit "A"

Case ID: 191201095
Case ID: 191201095

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
      Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22ⁿᵈ Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

Attorneys for Plaintiff

THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.

| | |
|---|---|
| JOSHUA DA SILVA, by and through his parents and legal guardians, ANDREZA LOPEZ DASILVA and JOSE DASILVA<br><br>        **Plaintiffs,**<br><br>vs.<br><br>TEMPLE UNIVERSITY HOSPITAL, INC. a/k/a d/b/a TEMPLE UNIVERSITY HOSPITAL<br>3401 N. Broad St.<br>Philadelphia, PA 19140<br><br>-and-<br><br>TEMPLE UNIVERSITY HEALTH SYSTEM, INC.<br>3401 N. Broad St.<br>Philadelphia, PA 19140<br><br>-and-<br><br>TEMPLE UNIVERSITY HOSPITAL DEPARTMENT OF OBSTETRICS, GYNECOLOGY<br>3401 N. Broad St.<br>Philadelphia, PA 19140<br><br>-and-<br><br>SAMANTHA JAGANNATHAN, M.D.<br>3401 N. Broad St.<br>Philadelphia, PA 19140<br><br>-and-<br><br>CLINTON TURNER, M.D.<br>3401 N. Broad St.<br>Philadelphia, PA 19140<br><br>-and- | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br><br><br>MAY TERM, 2019<br><br><br>No. _____ |

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

                    **Defendants.**

## CERTIFICATE OF MERIT AS TO DEFENDANT TEMPLE UNIVERSITY HOSPITAL, INC. a/k/a d/b/a TEMPLE UNIVERSITY HOSPITAL

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                              MESSA & ASSOCIATES, P.C.


                    By:    /s/ Megan M. Kwak
Dated: May 15, 2019              Attorney for Plaintiffs

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
    Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

**Attorneys for Plaintiff**

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

---

**JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA**

                    **Plaintiffs,**

vs.

**TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**SAMANTHA JAGANNATHAN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**CLINTON TURNER, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**PHILADELPHIA COUNTY
COURT OF COMMON PLEAS**

**MAY TERM, 2019**

**No. _____**

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

                           **Defendants.**

## CERTIFICATE OF MERIT AS TO DEFENDANT TEMPLE UNIVERSITY HEALTH SYSTEM, INC.

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.


                              MESSA & ASSOCIATES, P.C.


                         By:    /s/ Megan M. Kwak
Dated: May 15, 2019             Attorney for Plaintiffs

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
   Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

**Attorneys for Plaintiff**

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

---

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

           Plaintiffs,

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

**PHILADELPHIA COUNTY
COURT OF COMMON PLEAS**

**MAY TERM, 2019**

No. _____

Case ID: 191201095
Case ID: 191201095

-and-

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

                  **Defendants.**

## CERTIFICATE OF MERIT AS TO DEFENDANT TEMPLE UNIVERSITY HOSPITAL DEPARTMENT OF OBSTETRICS, GYNECOLOGY

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                  **MESSA & ASSOCIATES, P.C.**

                By:    /s/ Megan M. Kwak
Dated: May 15, 2019                  Attorney for Plaintiffs

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
    Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

**Attorneys for Plaintiff**

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

---

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

            **Plaintiffs,**

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

MAY TERM, 2019

No. _____

Case ID: 191201095
Case ID: 191201095

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

                              **Defendants.**

<u>**CERTIFICATE OF MERIT AS TO DEFENDANT SAMANTHA JAGANNATHAN, M.D.**</u>

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                              **MESSA & ASSOCIATES, P.C.**


                         By:    /s/ Megan M. Kwak
Dated: May 15, 2019             Attorney for Plaintiffs

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
    Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

**Attorneys for Plaintiff**

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

---

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

                Plaintiffs,

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

MAY TERM, 2019

No. _____

Case ID: 191201095
Case ID: 191201095

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

        **Defendants.**

## CERTIFICATE OF MERIT AS TO DEFENDANT SARAH MARTIN, M.D.

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                                     **MESSA & ASSOCIATES, P.C.**

Dated: May 15, 2019

                            By:    /s/ Megan M. Kwak
                                      Attorney for Plaintiffs

MESSA & ASSOCIATES, P.C.
By: Joseph L. Messa, Jr., Esquire
Megan M. Kwak, Esquire
Attorney I.D. Nos.: 53645/313946
123 South 22nd Street
Philadelphia, Pa. 19103
(215) 568-3500 / Fax: (215) 568-3501

**Attorneys for Plaintiff**

**THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED. MAJOR JURY.**

---

JOSHUA DA SILVA, by and through his
parents and legal guardians, ANDREZA
LOPEZ DASILVA and JOSE DASILVA

                Plaintiffs,

vs.

TEMPLE UNIVERSITY HOSPITAL, INC.
a/k/a d/b/a TEMPLE UNIVERSITY
HOSPITAL
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HEALTH SYSTEM,
INC.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

TEMPLE UNIVERSITY HOSPITAL
DEPARTMENT OF OBSTETRICS,
GYNECOLOGY
3401 N. Broad St.
Philadelphia, PA 19140

-and-

SAMANTHA JAGANNATHAN, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

CLINTON TURNER, M.D.
3401 N. Broad St.
Philadelphia, PA 19140

-and-

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

MAY TERM, 2019

No. _____

Case ID: 191201095
Case ID: 191201095

**SARAH MARTIN, M.D.**
3401 N. Broad St.
Philadelphia, PA 19140

-and-

**MICAELA FERNANDEZ, R.N.**
3401 N. Broad St.
Philadelphia, PA 19140

                  **Defendants.**

## CERTIFICATE OF MERIT AS TO DEFENDANT MICAELA FERNANDEZ, R.N.

I, Megan M. Kwak, Esquire, certify that:

An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant in the treatment, practice or work that is the subject of the Complaint, deviated from or fell outside of acceptable professional standards, and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

The claim that the above Defendant deviated from acceptable professional standards is also based on allegations that other licensed professionals for whom these Defendants are responsible, and vicariously liable, deviated from acceptable professional standards and that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm and/or increasing the risk of harm.

                                  **MESSA & ASSOCIATES, P.C.**

                         By:    /s/ Megan M. Kwak
Dated: May 15, 2019                       Attorney for Plaintiffs